* Jackson, J.
Since the argument of this cause, at [* 476J the last term, we have had occasion to consider the general question which it involves, although presented in a different aspect, in the case of Bartlet vs. Harlow, lately decided at Plymouth.(1) In that case it was determined that a conveyance by one joint-tenant, or tenant in common, of a part of the land by metes and bounds, to a stranger, whether the conveyance be by deed or by the levy of an execution, can have no legal effect or operation to the prejudice of a co-tenant. As the grantor himself has no right, on a partition, to select any particular portion of the land, and insist to have his moiety, or any part of it set off in that specific portion, so he cannot convey such a right to his grantee.
We are now to consider whether such a conveyance has any effect as against the grantor, and those claiming under him. This point seems to have been left undecided in the case of Porter vs. Hill,(2) where it is intimated that such a conveyance may possibly operate to this effect by way of estoppel. The Court also, in the case of Bartlet vs. Harlow, avoided giving an express opinion on this point, it not being necessary in that case. On the fullest consideration, we *416 are now satisfied that the conveyance may operate to this effect, without prejudice to the co-tenant, and without violating any principle of law. We see no difference in this respect between a conveyance by deed, and by the levy or extent of an execution. The former owner is estopped by the record of a judgment against him, and of the execution and return of it, as effectually as he would be by a deed under his own seal.
Suppose that, after such a conveyance, the other co-tenant has his moiety set off to him on a petition, or writ of partition, and that his share is so assigned as not to include any part of what was- so conveyed by his fellow ; it is obvious that he can no longer object to this conveyance. He has got all that he was entitled to, and has not now any interest in the part so conveyed. There is, then, no one, who can dispute the title of the grantee, unless it be the [*477] former owner. * But why should he be permitted to say, that nothing passed by bis deed, or by the levy of the execution against him ? He was in possession of the premises at the time of the conveyance, and he parted with that possession for a valuable and adequate consideration. There is no fraud, no oppression, nor injustice of any kind, in the transaction, as it regards him. In the one case he receives a price agreed on by himself. In the other, the price is fixed by disinterested men under oath, with a right on his part to redeem within a limited time, if the appraised value is too low ; which gives the effect of a voluntary bargain and sale by him. The only objection, which ever existed to the conveyance, arose from the injury it might do his co-tenant; but this objection is not competent for him to make. The law may allow the whole effect of this objection, without rendering the conveyance entirely void. Yet, unless the conveyance is merely void, the grantor would, under these circumstances, be estopped to dispute its operation.
There are many cases, in which conveyances and other transactions are void and ineffectual to some purposes, or as they regard certain particular persons, which yet are valid and effectual in other respects. This is the case with fraudulent conveyances made to defeat creditors ; and with conveyances of land not acknowledged and recorded pursuant to the statute. It is, therefore, as unnecessary as it would be unjust, that this rule of law, which is intended to prevent one co-tenant from making a conveyance to the prejudice of his fellow, should enable him to defraud a stranger, to whom he had conveyed for a valuable consideration, or a creditor, who had taken the land in discharge of his debt.
Instead of the case last put, let us suppose that, after such a conveyance by one co-tenant, the other should convey or release to the grantee his moiety in the same parcel of land. Each of the foimer owners would now be estopped by their respective deeds from dis- *417 puling the title of the grantee. As to all strangers, his possession alone would be * sufficient; and thus his title [*478] would, in effect, be indefeasible. Yet, if the first conveyance were merely void, it could not help or fortify the second, which would, therefore, be likewise void ; and thus a party in actual possession, with a deed of conveyance from each of the two persons who alone had any pretence of title to the land, would still be unable to maintain the possession. So, if one co-tenant of twenty acres should sell to a stranger his moiety in ten acres by metes and bounds, and afterwards to the same person the moiety of the remaining ten acres in like manner ; if the first conveyance is void, the second will be also void. Yet, in such a case there is no reason of justice or policy, which should prevent the grantee from holding an undivided moiety of the whole twenty acres.
Upon any other construction of such conveyances great inconveniences would follow. Two or more joint-tenants or tenants in common could never convey any specific portion of the land, unless they joined in the same deed. But one may be willing to sell with general warranty, while another will give only a quitclaim. So each may be willing to warrant his specific share ; but they may refuse to join in a deed with covenants of warranty, lest they should be mutually bound for each other. So, if one of the part-owners be absent and not known to exist, a case which has sometimes happened in the division of an intestate’s estate among his heirs, it would be highly unjust and absurd, that his return should wholly avoid such a conveyance made by the others in his absence. It is just that he should not be prejudiced by it. But there is no reason why the other co-tenants should, by this accident, be enabled to avoid their own contract, and to reclaim land which they had fairly sold for a valuable consideration.
It being, then, clear that a conveyance, by one joint-tenant or tenant in common, of his share in a certain specific portion of the land is not absolutely void, we are to see what is the effect of the several conveyances set forth in this statement * of [*479] facts. And first, we may throw out of the case all the conveyances by Eliphalet Fox, the father, whether of part or the whole. He was joint-tenant with his wife, Elizabeth Fox, who survived him ; and it has been decided in a case arising out of this same estate and title, that no conveyance by him could bind her after his decease, and that she took the whole by survivorship.(3) The demandant, therefore, can hold nothing under Eliphalet Fox ; and the three fourth parts, which belonged to him and his wife, descended, on her death, to her children and heirs. She left eleven children, *418 two of whom, Charles and Stephen R. Fox, are sued as tenants in this action ; and each of whom took one eleventh part of her three fourths, or three undivided forty-fourth parts of the whole. As it is said, in the statement of facts, that these tenants are severally seized of certain parts of the demanded premises, and they have respectively disclaimed as to the.residue, we must suppose that there has been a partition among the heirs, upon which the several parts now defended by those two tenants were assigned to them respectively as heirs of their mother. In this view of the case, it is obvious that the demandant cannot recover against either of those two tenants.
As to the undivided fourth part, formerly owned by Peter Fox, it appears,that he had conveyed the whole of it, in different portions, by deeds and executions which have a priority to the demandant’s title. Only one of these conveyances is now in question, namely, the mortgage made to Abbot; as the other two grantees, Wood anc Coburn, are not sued in this action. According to the principles before mentioned, the mortgage made to Abbot of five acres, ir. April, 1809, is good against Peter Fox, and all who claim under him. The demandant, who claims under a subsequent conveyance from the said Peter, is estopped to deny this title of Abbot; and the consequence is, according to the agreement of the parties, that he must become nonsuit.
We cannot here avoid remarking the irregularity of the pro ceedings in this suit. It appears that the three persons, • [ *480 ] * who are here sued, hold, each of them in severalty, three different parcels of the premises. Two or more persons so situated cannot be joined as tenants in one writ of entry. The gist of every such action is the supposed unlawful entry of the tenant, or of the person under whom he claims ; and the object of the suit is, to disprove the title of the tenant, by showing its unlawful commencement. But the proof of an unlawful entry by one has no tendency, in the case supposed, to prove the same point as to another ; their titles have no necessary connexion ; and it is, in effect, trying two or more distinct titles in one writ. So one of the tenants may be himself a disseizor; and the other may hold by alienation from a disseizor. But the demandant cannot have a writ against one as a disseizor, and against the other in the per. On the other hand, if a man is disseized by two or more persons, the disseizors have one joint estate, and one title ; the entry of all of them is one act; and the disseizee must, in such a case, sue them all jointly. So, if one disseizor conveys the whole to two or more jointly, they must all be sued together. But, where two persons hold in severalty distinct parcels under conveyances from the same disseizor ; or where they have themselves severally disseized the demandant of distinct parcels, it would be as irregular to join them in the suit, as to join *419 two trespassers, who had each committed a trespass at different times, and on different portions of the plaintiff’s land ; or two debtors, who had each given his own bond to the plaintiff for different debts. The parties having, however, agreed that the demandant shall become nonsuit, if he is not entitled to recover against either of the tenants, this irregularity will not materially affect the result; as we are of opinion that he cannot recover against either.†

Demandant nonsuit.

 Ante, page 348.

 9 Mass. Rep. 34.

 Fox vs. Fletcher, 8 Mass. Rep. 274

 Baldwin vs. Whiting & al., 13 Mass. Rep 57.