JAMES DUNN *versus* DAVID HAYES.

The proprietor of a one hundred and twenty acre lot conveyed a portion thereof, describing it thus in his deed. "Twenty acres of land in lot 56 in the 120 acre lot, west side of Royal's river, in N. Y. bounded as follows, viz. beginning on the westerly side of said river, by the river, at the dividing line betwixt the land owned by H. R. and the grantor in the aforesaid lot, thence running westerly on the said dividing line so far that a line running southerly parallel with the westerly end line of said lot until it comes within six rods of the southerly side line of said lot, thence easterly, keeping the width of six rods, from said side line to Royal's river aforesaid, thence by said river to the bounds first mentioned, containing twenty acres of land." And *it was held*, that the grantee was entitled to have the lot conveyed to him marked upon the earth in such a manner, that the westerly line should be parallel to the westerly line of the whole lot, and that the lot should extend southerly to within six rods of the southerly line, and that the line might at that end be made to terminate as near the river, there being no length of line in the deed there, as should be necessary to make twenty acres as nearly as might be, preserving some length to that line.

But if an actual location of the land according to the monuments in the deed had been made after its execution by the agreement of the parties, then owners of the land, it would be binding upon them and their grantees, and could not be varied by either owner alone afterward.

When the Judge, presiding at the trial, fully, clearly and correctly states to the jury in what a disseisin consists, and what is necessary to constitute it, he properly leaves to the jury to determine whether, upon the facts proved a disseisin did, or did not, take place.

If a plan be made in the absence of one of the parties interested, and there is no proof that its accuracy has been agreed to, and it has not been otherwise verified by oath, the plan is inadmissible.

WRIT OF ENTRY, demanding a lot of land in North Yarmouth. The demandant read a deed dated May 21, 1817, from Ichabod R. Loring to Jacob Hayes, jr. of a tract of land described thus :— "Twenty acres of land in the lot numbered fifty-six in the one hundred and twenty acre lot, west side of Royal's river, in said North Yarmouth bounded as follows, viz. beginning on the westerly side of said river by the river, at the dividing line betwixt the land owned by Hannah Russell and the grantor in the aforesaid lot, thence running westerly on the said dividing line so far, that a line running southerly parallel with the westerly end line of said lot until it comes within six rods of the southerly side line of said lots,

thence easterly, keeping the width of six rods, from said side line to Royal's river aforesaid, thence by said river to the bounds first mentioned, containing twenty acres of land."

A deed of the same premises, dated June 2d, 1834, from Jacob Hayes, jr. to Samuel S. Hayes.

A deed of the same, dated April 21, 1837, from Samuel S. Hayes to Luke Libbey.

A deed of the same, dated Dec. 6, 1839, from Luke Libbey to James Mann, jr.

A deed including same dated Feb. 22, 1840, from James Mann, jr. to James Dunn, the demandant.

The defendant read a deed dated in 1839, from John Hayes, as administrator of Ichabod R. Loring, conveying the remainder of Loring's estate adjoining the lot sold by him to Jacob Hayes, jr.

The jury were instructed by SHEPLEY J. presiding at the trial, that the deed from Loring to Jacob Hayes, jr. entitled said Hayes to have the twenty acre lot marked upon the earth in such a manner that the westerly line should be parallel to the westerly line of the Loring lot and to extend it southerly to within six rods of the southerly line, and that the line might at that end be made to terminate as near the river, there being no length of line in the deed there, as should be necessary to make twenty acres as nearly as might be, preserving some length to that line, if no actual location of the land according to the monuments in the deed had been made by the agreement of the parties, then owners of the land; and that if such agreement had been made, it would be binding upon them, and their grantees, and could not be varied by either owner alone afterward.

The counsel for the defendant contended, that when Samuel S. Hayes conveyed to Luke Libbey, he was disseised and so nothing in the disputed tract passed. The plan made by A. Skillings was introduced on which was traced the line claimed by the defendant to be the true line.

Samuel S. Hayes, called by the defendants, testified that he never claimed over the line run by General Russell while he

owned the land; that he did not cut over it; that the defendant cut up to it all that time claiming it as the true line, that when he sold to Libbey he pointed out that line as the line of his lot. There was testimony introduced by the plaintiff at variance with this testimony. The Judge stated the law in relation to what constituted a disseisin, and instructed the jury, that if from the testimony they were satisfied that S. S. Hayes was disseised of the disputed tract at the time he conveyed to Libbey, Libbey would obtain no title to it, and the plaintiff would fail to establish his title to it, but did not give the following instruction requested by defendant's counsel.

That if according to the testimony of Samuel S. Hayes, the defendant, with the knowledge and without objection of said S. S. Hayes, claimed up to the line run by Gen. Russell and occupied as people do their wood land, cutting timber and wood from it up to the Russell line, and that Samuel S. Hayes did not claim or occupy over the Russell line, that then there was a disseisin by the defendant, and nothing passed by the deed from Hayes to Libbey in the premises in dispute.

The defendant's counsel offered a plan made by Gen. Russell, and his field notes, it having been proved that the survey made by Gen. R. was made in the presence and by agreement of the then owners of the lands, who had previously agreed that Gen. Russell should make the survey to ascertain whether the plaintiff's grantor, Jacob Hayes, jr. had his twenty acres of land, he, said Hayes, claiming that he had not, and that the line which the plaintiff claims in his writ would not give him twenty acres exclusive of what had been taken by the running of the adjoining lot, called the Hannah Russell lot. The line called the Russell line was laid down after the first survey above named had been made, and in the absence of one of the parties. There was evidence tending to prove and to disprove, that he afterward agreed to it; but the plan was made in their absence, and presented to one and not proved to have been agreed to by the other party. These were excluded on the ground that their accuracy had not been proved to have been agreed to, nor otherwise verified by any oath.

It appeared that nearly twenty years ago Skillings ran out by the agreement of Loring and Jacob Hayes, jr. a line, and that it was then marked on the earth, and had so continued; and there was evidence tending to prove, that both parties agreed to it, and evidence to the contrary. This was submitted to the jury under the instructions before stated. It appeared that the parties occupied to it during the life of Loring. The verdict was for the demandant. If these instructions or refusals to instruct were erroneous, the verdict is to be set aside.

The arguments were by

*Fessenden*, *Sen.* & *Deblois*, for the tenant; who cited *Sumner* v. *Williams*, 8 Mass. R. 162; *Fowle* v. *Bigelow*, 10 Mass. R. 379; *Purinton* v. *Sedgley*, 4 Greenl. 283; *Scamman* v. *Sawyer*, ib. 429; *Vose* v. *Handy*, 2 Greenl. 322; *Keith* v. *Reynolds*, 3 Greenl. 393; *Robinson* v. *Swett*, 3 Greenl. 316; *Pray* v. *Pierce*, 7 Mass. R. 381; *Kenn. Pur.* v. *Springer*, 4 Mass. R. 416; *Boston Mill Cor.* v. *Bulfinch*, 6 Mass. R. 229; 1 Stark. Ev. 326; 4 Wend. 394; 10 Ves. 123; Story on Agency, 126.

And by *Longfellow*, *Sen.* and *Preble*, for the demandant: who cited *Makepeace* v. *Bancroft*, 12 Mass. R. 469; *Davis* v. *Rainsford*, 17 Mass. R. 207; *Moody* v. *Nichols*, 16 Maine R. 23.

The opinion of the Court was drawn up by

TENNEY J. — This is a writ of entry, to obtain possession of certain real estate situated in North Yarmouth. The demandant claims through several mesne conveyances from J. R. Loring, who conveyed to Jacob Hayes, Jun. by deed dated May 21, 1817, the description of which is preserved in all the subsequent conveyances and is in these words, " Twenty acres of land in lot 56 in the 120 acre lot west side of Royal's River in North Yarmouth, and bounded as follows, viz. Beginning on the westerly side of said river, by the river at the dividing line betwixt the land owned by Hannah Russell and the grantor in the aforesaid lot, thence running westerly on said dividing line so far that a line running southerly parallel

with the westerly end line of said lot, until it comes within six rods of the southerly side line of said lot, thence easterly, keeping the width of six rods from said side line to Royal's river aforesaid, thence by said river to the bounds first mentioned, containing twenty acres of land." The defendant claims the residue of the said 120 acre lot, adjoining the lot conveyed to Jacob Hayes, jr. by virtue of a deed from the administrator of said Loring.

A verdict having been returned for the demandant, exceptions are taken to the instructions of the Judge to the jury, and also to the withholding other instructions requested by the defendant's counsel. Were the instructions of the Judge erroneous? The defendant insists that the demandant is not at liberty to extend the boundaries of his lot so as to "embrace more than twenty acres — that the intention of the parties to the original deed restricts him to this quantity, and that this is the controlling part of the description. On a fair construction of the language used, we think Loring intended to convey to Hayes twenty acres of land and no more; and the intention of the parties must govern, so far as that intention can be derived from the deed. But monuments clearly referred to, and existing, are not to yield to courses and distances, or quantities. The former are supposed to be fixed, and indicate with greater certainty the meaning of the parties, than the latter, which may often be misconceived, erroneously stated, and which may not in the same case be laid down by different individuals, and at different times, in precisely the same manner. Hence if a grantor convey a given quantity of land and no more, and still locates it by well known and fixed boundaries and monuments, these boundaries and monuments are to control, and remain, notwithstanding it may afterwards be found, that they embrace more or less, than the precise quantity specified. Where the land is represented by several distinct and well described lines, none of them are to be disregarded. In this case the parties contemplated, as we are to suppose, separating twenty acres from the 120 acre lot, on the eastern end, to be conveyed to Hayes. They evidently intended to have it

bounded in part by the river, in part by Hannah Russell's land, in part by a line parallel with the western end line of the whole lot, and by a line parallel with the southerly side line of the whole lot and six rods distant therefrom. Where the western line of the lot conveyed would come, they had not ascertained in their own minds. But that it was to be at some distance from the river where the line last mentioned should strike it, six rods from the south line, is clear. If the grantor was willing to take the risk of incorporating such a line of indefinite length to be sure, into the description, it is not perceived why he is not governed by it, as much as though he had referred to some natural monument, which could not be mistaken. If he had referred to such, and more than twenty acres had been contained he must submit. He could not change that or any other certain description. In the absence of any natural monument at the river, where the last named boundary should strike the same, the point there was fixed at a distance of six rods from the south line of the whole lot, and is as clearly indicated as the point of beginning. But on the construction contended for by the defendant's counsel, that point might and probably would be wide of the description. If we are at liberty to exclude a line mentioned in a deed, why have we not the power to change the direction of a line to accommodate the boundaries to the quantity? When the line, which was to be parallel with the west end of the whole lot and the line from the termination of that to the river cannot both exist together and preserve exactly the quantity, on what principle is it, that the direction of one must be held absolute, and the other annulled entirely? We are not able to see that any thing was omitted in the description, which we can supply, and which will change the construction adopted. The sense is perfect as it stands, upon the hypothesis that the western line of the lot conveyed to Hayes would terminate at a point at some distance from the river. The first instruction, to which exceptions were taken, we think, was properly given.

The second instruction is considered correct in principle and is sustained by authority. It is to be presumed that par-

ties to a contract have clear and distinct views thereof, and that their intentions are full and definite. And when the parties to a deed shall, after its execution and delivery, go on to the ground and erect monuments and make boundaries, and continue to be governed by them for a long time, is it to be doubted, that they thereby conformed to what they understood, at the time the contract was made, to be their agreement? And the monuments referred to in a deed, although set up after the delivery, will conclude the grantor, even though it should not comport with the lines specified in the deed. "Thus if a deed of land should pass at a distance from the premises granted, and reference should be made to stakes and stones for the termination of one of the lines, no such monument actually existing; and the parties should afterwards fairly erect such a monument, with intent to conform to the deed, we think the monument so placed would govern the extent, although not entirely coinciding with the line described in the deed." *Varnum* v. *Abbot & als.* 12 Mass. R. 474; *Davis & als.* v. *Rainsford*, 17 Mass. R. 207; *Moody* v. *Nichols*, 4 Shep. 23. And the same principle is fully recognized by other states.

Exceptions are also taken, that the Judge declined to instruct the jury, that certain facts alleged to be proved in the testimony by a certain witness constituted a disseisin, and thereby prevented the operation of one of the deeds, through which the demandant claimed. It distinctly appeared, that the jury were instructed in what a decision consisted, and what was necessary to constitute it, and no objection was made at the trial or in the argument before the whole Court, that the law in this respect was not fully, clearly and correctly expressed. If so, there was no failure of duty; it was for him to determine the manner and the terms, which he would use in stating to the jury the principles, to which they would apply the evidence. It appears, that upon this point there was conflicting testimony. It was for the jury to hear what each witness said and what weight they would give to his statement. It may have happened in this case, as it probably sometimes does, that

Dunn v. Hayes.

partial credit only was given to the testimony of a single witness. When the law is unfolded in the statement of general principles, easy to be understood, the jury are left to apply to it the result of their deliberations, upon the whole evidence in the case. The instructions requested might be in effect a statement of a purely hypothetical case, and one which might convey a very imperfect view of the law, when applied to the evidence, by which the jury would be governed.

The objection made to the introduction of Gen. Russell's plan and field notes was well taken. They did not come authenticated as evidence is required to be. Nothing showed, that they were in reality, or believed by Russell to be correct. They did not appear nor were they proved to be any thing more than loose and imperfect memoranda and delineations.

Gen. Russell was selected by the parties for a certain specified and limited purpose, to wit, " to make the survey to ascertain, whether the demandant's grantor, Jacob Hayes, jr. had his twenty acres of land, he, the said Hayes, claiming that he had not, and the line, which the plaintiff claims in his writ would not give him twenty acres exclusive of what had been taken by the running of the adjoining lot." The employment of Russell was in contemplation of certain lines, which had long before been run by Skillings and acquiesced in by the grantor till his death. No power was given to him, to correct or to extend the lines, but only to ascertain whether the demandant would have his twenty acres remaining after the northern line was rectified and placed farther south. The lines run by Russell could not bind the parties, and the one run by him after his first survey was in the absence of one of those who had employed him for other purposes, and it was a question in issue, whether the parties had agreed thereto. But the plan was made in the absence of both, presented to one, and not proved to have been agreed to by the other.

Russell could not be considered their agent so that they would be bound by his plan, unless it had appeared, that they had acknowledged its correctness, which so far as the demandant is concerned is negatived by the facts in the report.

The case represents, that during the lifetime of Loring, he, and those holding under his deed to Jacob Hayes, jr. occupied to the line as now claimed by the demandant, and that it was not till after the death of the grantor, and the residue of this lot had been conveyed by his administrator, that any dispute arose. This consideration, though perhaps not tending to support the particular ruling of the Judge, shows the occupation to have been in pursuance of what the original parties to the conveyance supposed to be their respective rights; and although there was more than twenty acres actually embraced in the deed, yet when we take into consideration the well known practice in many instances to give liberal allowance in lines, we are not surprised, that there should have been this acquiescence on the part of the grantor.

*Judgment must be entered on the verdict,*