# REPORTS.

## ROCKINGHAM,

### JANUARY TERM, A. D. 1849.

### SMITH *v.* KNIGHT.

If one, shown to be the owner of one ninth part of certain real estate, as tenant in common, be in possession, claiming, also, an additional eighteenth part, and his claim be acquiesced in by the other tenants in common, those facts are evidence that he is seized as tenant in common of three eighteenth parts ; and a levy of an execution upon a judgment against him, upon those three eighteenth parts, will vest the seizin thereof in the judgment creditor, so as to entitle him to maintain a petition for partition, as against a tenant in common who has so admitted his interest.

If, in the levy of an execution, the appraisers certify the value of three eighteenth parts of the land, and it appears by the return that the whole land was set off, *it seems* that that will pass the interest of the debtor, if it is the same that has been appraised ; and the creditor so elect. The officer, however, may amend his return, even against the rights that may have been acquired since.

An execution against a tenant in common cannot be extended upon the land so held, by metes and bounds. Whether the debtor, having had no notice of such extent, would be estopped by it, *quære?* But a creditor who had attached the debtor's interest before the levy, but pending the attachment of the party who caused it to be made, would not be so estopped, *it seems*.

If, in the levy of an execution, it appear, from the certificate of the magistrate, that the appraisers chosen were sworn on a particular day, before the expiration of thirty days after judgment, and the officer have dated his proceedings after the expiration of that term, he may amend, to save the attachment.

PETITION FOR PARTITION. The petitioner alleged that he was tenant in common of three eighteenth parts of two tracts of land, in Atkinson, with the defendant and other persons unknown.

At the trial upon the general issue, it appeared that John Knight, the father of the defendant, once owned the premises of which partition is prayed. He died on the 13th day of June, 1813, leaving a widow, Eunice Knight, to whom the two tracts of land, described in the partition, were assigned as her dower, on the 14th day of March, 1816. She died on the 5th day of March, 1844, and before the levy of the executions mentioned in this case. John Knight left, also, ten children, his heirs-at-law, among whom were the defendant, Caleb Knight, who died before the levy of the executions aforesaid, and Henry Knight. One of the children, having died, her share was inherited by her brothers and sisters, so that each became the owner of one ninth part of the premises.

The petitioner contended that the defendant and Henry Knight once owned the interest of Caleb Knight in the premises. To prove this, he introduced a witness who testified that he had heard the defendant and Henry Knight, when together, declare that they owned the interest of Caleb Knight in their father's estate, and the witness said that their claim was acquiesced in by the heirs. The defendant objected to this evidence as incompetent.

The petitioner then proved that on the 16th day of January, 1844, at half-past six o'clock P. M., he attached all the interest of Henry Knight in the premises. Judgment was recovered in th t suit, and execution issued on the 3d day of March, 1845. It was levied on the interest of Henry Knight in the premises, and the return bears the date of the 18th of August, 1845. The appraisers describe two tracts of land by metes and bounds, and then say: "which tracts of land were shown to us as the estate of the said debtor; the said debtor holding three undi-

vided eighteenth parts of each of said tracts, in common with others." They then say: "that three undivided eighteenth parts of said tracts are of the value of eighty dollars and no more, and we have set off three undivided eighteenth parts thereof to said creditor, in part satisfaction of this execution." The officer's return states that the appraisers "set off the same land by metes and bounds, as aforesaid."

The counsel for the petitioner moved that the officer be permitted to amend his return, by stating that the appraisers set off "three undivided eighteenth parts of the said tracts of land." The counsel for the defendant objected to the allowance of the amendment, as prejudicial to his rights; but the court permitted the amendment to be made.

The counsel for the defendant contended that the amendment, not being admissible, the levy was defective, because the appraisers appraised three eighteenths of two tracts of land, setting them out by metes and bounds, and the officer returned that they set off the whole tracts, and that "he delivered seizin and possession of the said tracts of land," and not of the three eighteenth parts.

The petitioner also offered in evidence a copy of a deed, dated on the 26th day of January, 1846, by which Amos Knight and several others, children of John Knight, deceased, released to the defendant all their interest in that part of the estate of the deceased which was assigned to his widow as her dower, for the purpose of showing that the defendant, at the date of the petition for partition, was tenant in common with the petitioner of some portion of the premises.

The defendant then proved that James Knight was appointed administrator of the estate of John Knight on the 15th day of April, 1816, and that on the same day license was granted him, by the court of probate, to sell two thirds of the real estate of the intestate. On the 20th

day of the same month he sold and conveyed the two thirds aforesaid, being all the land except the dower, to Henry Knight, who, on the 3d day of July, 1819, conveyed one undivided half of the premises, thus conveyed to him, to the defendant. On the 14th day of May, 1836, Henry Knight released to the defendant all his interest in one half of the same premises, describing the part released by metes and bounds, and including a part of both pieces set off as dower. On the same day John Knight released to Henry Knight a part of the land conveyed by the deed from James Knight to Henry, describing it by metes and bounds.

The defendant then proved that on the 16th day of January, 1844, at nineteen minutes past two o'clock P. M., Dolly Johnson attached all the interest of Henry Knight in the lesser piece of land described in the petition, which interest of Henry Knight included the buildings on said lesser piece, with the privileges and appurtenances thereunto belonging. The situation of this piece of land was described by a witness. He stated that the distance from the front of the house to the road was about two rods; that on the southerly side of the house there was a passage-way about or a little over two rods wide; that the site for the house was excavated from the side of the bank; that the space between the house and the bank was only wide enough for a convenient passage-way around the house; that beyond this space, and on the top of the bank, there was a space three or four rods wide, which had sometimes been used for a wood-yard, and sometimes for a clothes-yard, by the occupants of the house, and sometimes for the purposes of cultivation.

Dolly Johnson recovered judgment at the February term, 1845, and on the fourth day of March, 1845, levied her execution. On the 20th day of January, 1844, the defendant attached all the interest of Henry Knight in the premises herein before described, recovered judgment at

the February term, 1845, and levied his execution on the fourth day of March, 1845, on the premises attached.

The defendant contended that the petitioner took nothing by his levy on the land, as the property of Henry Knight, because the interest of Henry Knight in the lesser piece became vested in Dolly Johnson, by her prior attachment, and her levy in pursuance thereof; because the interest of Henry Knight in the residue became vested in the defendant, by virtue of his attachment and levy, and because the petitioner's levy was defective, and the defect could not be remedied by an amendment in prejudice of the defendant's rights.

A verdict was taken, by consent of the petitioner, subject to the opinion of the Superior Court, for three undivided eighteenth parts of the premises, upon which judgment is to be rendered; or it is to be amended, and judgment rendered upon it, as amended; or it is to be set aside and a new trial granted, as the court may order.

*Porter*, for the defendant.

At the time of the attachment, Henry Knight had nothing in the lesser piece of land described in the petition, except the south part of the dwelling-house, and the small parcel of land around it; and nothing in the large tract on the west side of the road, except the northerly portion.

Both parties claim that he had some interest in those parcels of land. We say he had one ninth part, except of that which he had conveyed to John. The plaintiffs say that he had three eighteenth parts. In order to prove that he had so much, the petitioner offers evidence of a purchase by Henry from Caleb. But there was no evidence of the share of Caleb being possessed by Henry and John, nor that there was a deed from Caleb to them. There might have been an agreement, but that was not enough. This is an attempt to set up nothing but a parol title. But conceding that point, which of the parties to

Smith *v.* Knight.

this suit has the best title? Isaac Smith, the petitioner, attached on the 16th of December, 1844, but omitted till the 18th of August, 1845, which was more than thirty days after judgment, to make his levy. He, therefore, took nothing by his attachment. His levy is void. The appraisers valued only three eighteenth parts, but the levy assumed to pass the whole land. The amendment of the return, in this particular, cannot be made to our prejudice. *Bowman* v. *Stark*, 6 N. H. 459; Rev. Stat. 376, sec. 11.

*Marston*, for the petitioner.

The levy was commenced by swearing the appraisers. Rev. Stat., ch. 195, sec. 5. The exception, not having been taken at the trial, ought not now to be taken. Henry Knight is shown by the declarations of the defendant, and of the other co-tenants, to have been the owner, with the defendant, of Caleb Knight's ninth part. This was sufficient as against the defendant. 17 Vt. 440; 8 Shep. 130; 12 Vt. 692.

The amendment was allowable upon the principle of *Whittier* v. *Varney*, 10 N. H. 291, and *Bell* v. *Gilbert*, decided lately in Grafton county.

Dolly Johnson's levy conveys nothing. The description is not distinct. A levy is different from a deed in the degree of precision required in description. The rule that the construction shall be strong against the party from whom the estate passes, does not extend to levies which are not the act of such party. Besides, the defendant does not claim under Dolly Johnson, and, therefore, cannot prove the land to be hers, in answer to our claim founded on actual seizin.

*Porter*, in reply.

We may show seizin in Dolly, to rebut the petitioner's evidence of seizin. She was seized from the moment of

her levy. Her levy, by the description of "house and its appurtenances, with wood-shed, and the arch, so called, adjoining the same house," is sufficient. 3 Cruise 40; Shep. Touch. 94; 1 Co. Lit. 5, b; 1 Co. Lit. 56, b; 2 Saund. 400; *Gibson* v. *Brockway*, 8 N. H. 465.

WILCOX, J. The petitioner alleges that he was tenant in common of three eighteenth parts of two tracts of land, with the defendant and other persons unknown. He derives title by the levy of an execution upon the premises, as the property of Henry Knight. Henry Knight was seized of one ninth part of the premises, as heir to his father, John Knight; and there was evidence tending to show that he held one half of the interest of Caleb, another of the nine surviving heirs of John Knight, deceased.

A petition for partition may be maintained by a tenant in common, seized of a freehold estate, or possessed of an estate for years, in the land.

It is not necessary that the petitioner should show an estate absolutely indefeasible and free from all defects. It is sufficient if he show an estate *primâ facie* good against the petitionee. If, for instance, he produce a deed from an admitted tenant in common, it is not necessary for him to prove that the grantor was not an infant, or *non compos*, or a *feme covert*, or that there was no secret taint infecting the title, and rendering it void as against the grantor, or some other person. It is sufficient if the same evidence of title is given that is required to maintain real actions generally. And even in a writ of right, which is the highest writ in the law for the recovery of real estate, the seizin of the demandant in fee simple is proved, *primâ facie*, by evidence of his actual possession, which is always sufficient against a stranger. Such a possession, with claim of title, is sufficient to enable a grantor to convey, and the grantee, entering under the conveyance, acquires a freehold. 2 Greenl. Ev. 553.

Possession of lands, with claim of title, and taking the profits, is *primâ facie* evidence of a seizin of a freehold estate. *Straw* v. *Jones*, 10 N. H. 400.

In this case the defendant and Henry Knight were each seized of at least one ninth part of the premises in controversy; and they, with their co-tenants, were, so far as appears, in actual possession. There is no evidence of any adverse claim or possession.

The defendant and Henry also claimed to own Caleb Knight's share, which was one ninth part. They admitted each other's right, and all the other co-tenants recognized their right to that share. Henry Knight was, therefore, in actual possession of three eighteenth parts of the premises, claiming to own them; and that, within the authorities, is *primâ facie* evidence of a freehold estate, against this defendant, who sets up no title adverse to that, and has heretofore recognized and admitted it.

Under these circumstances the petitioner levied his execution upon Henry Knight's three eighteenth parts, and that levy gives him a seizin, in fact, of the premises. The evidence to this point was, therefore, properly admitted.

But various objections are taken to the petitioner's levy, and must be considered.

The appraisers certify, upon the execution, that they appraised three eighteenth parts of the land as Henry Knight's interest, and set that part off in part satisfaction of the execution. The officer's return states that the appraisers set off "the same lands" to the judgment creditor at the appraised value; and thus it appears to be a levy upon the whole of the land, and not upon the three eighteenth parts.

If this be admitted to be so, the extent seems still to be good as against the defendant. The certificate of the appraisers is no part of the officer's return, unless he makes it so by some reference to it in his return. It is the return which is the proper evidence of the levy, and of the title

Smith *v.* Knight.

derived from it; and that is conclusive and cannot be contradicted. If, therefore, the return of the officer shows that the whole land was set off to the judgment creditor, that will pass the lesser interest, in fact belonging to the debtor, if the creditor elects to take it at the sum at which the whole has been appraised. *Kelly* v. *Burnham*, 9 N. H. 20; *Coös Bank* v. *Brooks*, 2 N. H. 148.

The officer, however, had leave to amend his return, so as to show a levy upon the three eighteenth parts, as it in truth was. To this the defendant objects, because, as he claims Henry Knight's interest by virtue of a levy of an execution, he is a third party, to whose prejudice no such amendment can be made; and he cites *Bowman* v. *Stark*, 6 N. H. 459, and Rev. Stat. 367, sec. 11, to sustain his objection.

But this question has already been considered and settled in this court; and it has been determined that when there is something in the record to amend by, and which sufficiently indicates to all how the proceedings have actually been, and that they have been regular, though informally returned, such amendments may be allowed, even against third persons. *Whittier* v. *Varney*, 10 N. H. 291.

The same doctrine has been reaffirmed since the Revised Statutes were passed. *Gilbert* v. *Bell.*

It is also contended that the petitioner does not maintain his right in all the land described in his petition, and it is shown on the part of the defendant that one Dolly Johnson has levied an execution upon part of the land of which Henry Knight was seized in common with others, before the levy was made by the petitioner. The attachment made by Dolly Johnson was prior, in fact, but her levy was made after the petitioner's attachment.

An execution against one holding lands as a tenant in common, cannot be extended by metes and bounds upon a part of the land so holden. *Porter* v. *Hill*, 9 Mass. 34; *Bartlett* v. *Harlow*, 12 Mass. 348; *French* v. *Lund*, 1 N. H. 42; *Thompson* v. *Burbec*, 12 N. H. 563.

It is said, however, that Henry Knight, and those claiming under him, are estopped to make the objection. *Varnum* v. *Fox*, 12 Mass. 474.

It is not necessary, in this case, to settle how far the levy of an execution, which is supposed to be *in invitum*, and especially a levy like the present, in which Henry Knight did not participate, and which was in fact unknown to him by reason of his absence, can operate as an estoppel.

The levy of Dolly Johnson having been made upon only a part of the land held in common, is not valid against the defendant, and he and any other co-tenant may avoid it; and according to the case of *French* v. *Lund*, that has been cited, it is not valid against the petitioner. He had acquired an interest by his attachment prior to the levy made by Dolly Johnson. She could, therefore, do nothing afterterward to affect his right, and he is not estopped by the subsequent levy.

But without settling this question definitely, as it is one in which Dolly Johnson, not a party to this suit, has an interest, and likewise because, in this view of the case, an amendment in the return of the petitioner's levy, hereafter to be noticed, may be required, it is, perhaps, sufficient for this case to say that this levy of the execution of Dolly Johnson is clearly invalid against the defendant. He is not bound by it, for the reason that has been adverted to, and he does not claim under it.

He ought not, therefore, to be permitted to set it up. If it is good in any event against the petitioner, it is so only by way of estoppel, and the defendant is not in the position in which he can avail himself of that estoppel. It becomes unnecessary, therefore, to discuss the questions that have arisen as to the form and effect of her levy.

As to parts of the land described in the petition, and not embraced in the levy of Dolly Johnson, the defendant claims himself to hold them by virtue of a levy of an exe-

cution in his own favor against Henry Knight, made on
the 4th day of March, 1845.

The case states that on the 20th day of January, 1844,
the defendant attached all the right and interest of Henry
Knight " in the premises herein before described, and re-
covered judgment ; and that a levy was made on the ' prem-
ises attached.' " Whether that levy was made upon all the
lands held in common, does not clearly appear.

The petitioner's levy was made on the 18th day of Au-
gust, 1845, and it appears by the officer's return to have
been commenced at that time. It is, therefore, clearly
subsequent to the defendant's levy, and as the case now
stands, the defendant must, upon this point, prevail.

In arriving at this conclusion, we infer that the defend-
ant's levy embraces all the lands held in common, because
the case states that he attached " all Henry Knight's inter-
est in the premises herein before described," which plain-
ly includes all the land embraced by the petition, and that
he levied on " the premises attached," though it would ap-
pear that the defendant did not claim to hold the tract of
land embraced in the levy of Dolly Johnson.

But it appears, from inspecting the original execution,
which has been laid before us, that two appraisers were
appointed and sworn on the 4th day of March, 1845, upon
the petitioner's execution, which was in season to pursue
the lien created by his attachment, which was made on
the 16th day of January, 1844, prior to the defendant's at-
tachment. The oath is certified by the officer as a magis-
trate, and no suggestion was made upon the trial, as we
understand, that the lien acquired by the attachment was
lost.

Probably, if such an objection had been made, it might
have been obviated by an amendment, since the facts ap-
pearing upon the record sufficiently indicate that the levy
was commenced on the 4th day of March, 1845, although
not completed until the 18th day of August following,

which was the date under which the sheriff returned all his proceedings.

But these matters are not now regularly before us, and upon the questions transferred, the defendant is entitled to have the verdict set aside and a new trial granted. Upon an amendment of the officer's return of the petitioner's levy, he would be entitled to three eighteenth parts.

*A new trial granted.*