Samuels, J.
At the date of the covenant between Bonnally and James Wilson, August 16, 1821, Bonnally had but an equitable title to the fee simple in the land, the subject of that covenant; and although his covenant, if he had the legal title, might have operated under the statute of uses as a covenant to stand seized to the use of James Wilson of one undivided moiety thereof, with warranty, yet having but an equitable title, this result could not at that time follow. See 1 Kev. Code, p. 370, § 29. Whether the fact that Donnally afterwards, on the 1st day of February 1830, acquired the legal title from John Wilson, could retroact on his covenant with warranty to stand seized to the use, and by estoppel or rebutter be held to pass the legal title to James Wilson, it is not mate- *90 vial in this case to enquire. See Doswell v. Buchanan's ex'ors, 3 Leigh 365. Whether the estate was legal or equitable, the interests of Donnally and James "vyiigQQ Were the same; that is, an equal undivided moiety to each. These part owners obviously regarded themselves as having a merely equitable title on the the 16th August 1821, the date of their covenant, and on the 1st January 1829, when James Wilson assigned his interest to Peter Grant. After this assignment Peter Grant in his lifetime, and his heirs after his death, held in common with Donnally. In this state of the subject Donnally, one of the part owners, could not appropriate to himself any specific portion thereof, or do any other act whatever in derogation of the right vested in Grant’s heirs, to enjoy equally with himself tire common property, and every parcel of it. Robinett v. Preston's heirs, 2 Rob. R. 273; Varnum v. Abbott, 12 Mass. R. 474. Whether Donnally did by his deed of February 2d, 1830, attempt to convey to John J. Cabell the upper portion of the upper half of the common subject, or only an undivided moiety thereof, is not very clear, as the terms of the deed are somewhat ambiguous and repugnant in themselves. Construing the deed, however, in reference to the rights of the parties, and the condition of the property, it must be held that the deed passed only an equal undivided moiety of the common subject; and that Cabell and Grant’s' heirs thereafter held in common the whole subject, and every part thereof.
Although a party holding in common with others can do nothing to impair or vary in the slightest degree the rights of his cotenants, yet if he execute a deed for a specific portion of the common subject, or make a contract in regard to it, if upon partition such portion shall fall in severalty to the party so making the deed or contract, he will be bound by his act. McKee v. Barley, 11 Gratt. 340.
*91 The interest of one undivided moiety held originally by Donnally, and transmitted by successive conveyanees to the appellants, and the like interest held by James Wilson, and transmitted by like conveyances to the appellees, remain a common subject, except in far as they have been varied by the agreement of August 8th, 1822, between Donnally, Wilson, Lovell and Bream, ratified by Cox April. 1st, 1844, in regard to the use of the coal lands, a portion of the comrpon subject.
The law of partition of real estate requires that each part owner shall have in severalty a part equal to his interest in the whole subject, if practicable, having a due regard to the interest of all concerned. Yet it frequently occurs, that because of the limited extent or the nature of the property, it is impossible to make partition as above indicated, without impairing the value of all the portions, or of some of them. In such cases the law affords other means for doing exact justice to each and all: instead of dividing the property into shares of equal values, it may be divided into shares of unequal values; and when so divided the law as it originally stood, and as amended by the statute, Code, ch. 124, § 2, p. 526, will correct the inequality by means of a charge of money on the more valuable in favor of the less valuable portion, or by other means recognized in the law of partition.
There is enough in the record to show that the common property is of little value for any purpose other than the manufacture of salt; that the coal lands, a portion of the subject, was partially severed by Donnally and Wilson from the land lying between the hill and the river, by their contract with Lovell and Bream, dated August Sth, 1822, and ratified by Cox 1st April 1844. There is, moreover, enough to show that the space lying between the hill and the river is only sufficient for the salt furnaces, and their necessary build *92 ings and fixtures, as contemplated by Donnally and Wilson, in their contract of August 8th, 1822, with and Bream; that is to say, two salt furnaces to Donnai]y) and the same number to Wilson. To give to each class of part owners the full enjoyment of their interests under the contract about the coal lands, and of their right to have two salt furnaces and the means of working them, it seems inevitably necessary to divide the land lying between the hill and the river into two parcels of equal quantity. The general rule of partition requires an allotment of those parcels to the part owners; yet it may benefit both classes of owners to assign the parcels; or it may benefit one class without injury to the other, to assign rather than to allot; in either case the commissioners might avoid the risk of an unfortunate allotment, by resorting to an assignment. The commissioners to make partition are vested with ample powers to give to each part owner a seve-. ral jiroportion of the subject equal to his relative proportion in the whole subject. Before a final decree of partition can be made, commissioners should be appointed to ascertain and report to the court whether there be any inequality in the values of the parcels of land, of equal quantity, lying between the river and the hill, and the extent thereof; and further to ascertain and report the best mode of correcting the inequality, if any; whether by a charge of a gross sum of money payable at once; or of an annual sum of money payable for a definite time or for all time; or if these means be found impracticable or inconvenient, then by what other means provided by the law of partition.
Although it is said that some of the tenants in common have held portions of the common subject for their separate use, yet the fact is not so alleged in pleading and shown by proof as to justify the court, in the present state of the record, in making a decision *93 how the fact is, nor in a decision whether such separate use was or was not had under circumstances requiring an account of rents and profits between the two classes of tenants in common. It is also said that permanent improvements adding to the present value of the common subject, have been made by some of the parties now before the court, or those under whom they claim, and to whose rights for compensation for improvements they succeed; but there is not enough in the pleadings and proof in the cause on which to found a decree. To avoid the danger of doing injustice, it will be best to leave the subject of accounts for rents and profits and of permanent improvements to be disposed of by the Circuit court, with the aid of such lights as the parties in interest may shed thereon.
I am of opinion to reverse so much of the decree as is in conflict with the principles here declared, and to affirm it as to the residue.
The other judges concurred in the opinion of Samuels, J.
The decree was as follows :
The court is of opinion, that William A. McMullin, James M. Laidley, Rachel Grant and Ann R. Spalding have title in fee simple to one equal undivided moiety of the tract of land in the bill and proceedings mentioned as containing eighty acres'; and that Charles A. Cox, William Cox, Cornelius Cox, Mary Jane Cox, George M. Cox and Francis Cox have title in fee simple to the other equal undivided moiety thereof; and that the land is held by these two classes of part owners as tenants in common.
The court is further of opinion, that in the case as it now stands, partition can be made only between the two classes, without going into a partition between the members of the same class.
The court is further of opinion, that the contract *94 between Andrew Donnally, James Wilson, Joseph Lovell and J. M. Bream, dated August 8th, 1822, and by William B. Cox, April 1st, 1844, in regard £0 coaj ]an[¡_ a part 0f the common subject, is bind-fog upon the parties before the court; and that it has been properly carried into effect by the decree of the Circuit court.
The court is further of opinion, that inasmuch as the property held in common is valuable only for the purpose of manufacturing salt; that as the coal lands have been appropriated by valid contract (almost exclusively) to the purpose of furnishing fuel for salt furnaces limited in number, and divided in proportion to the interests of the part owners; that as the space between the Kanawha river and the hill is the only portion of the common subject suitable for wells, furnaces and other structures necessary in the manufacture of salt; that as the limited extent of this space will afford room only for the two furnaces and other necessary buildings which Donnally and Wilson respectively were allowed to have and supply with fuel under the contract with Lovell and Bream: that therefore the land lying between the hill and the river should be divided equally in quantity by a line running from the river to the hill.
The court is further of opinion, that before partition can be made, commissioners should be appointed to ascertain the line of partition between the parcels of equal quantity; and further to ascertain whether these parcels be of equal or unequal values. If of unequal values, then to report the best mode of correcting the inequality; whether by a charge of a gross sum of money, or of an annual sum payable for a definite time, or for all time; or if these modes be impracticable or inconvenient, then by such other means as are provided by the law of partition.
The court is further of opinion, that the commissioners appointed to make partition may allot each of the *95 classes of part owners one of the equal quantities into which the common subject shall be divided. If, however, the interests of both classes will be promoted, if the interests of one class will be promoted, without injury to the other class, in such case the commissioners may assign the parcels without putting the owners to the risk of an allotment; these parcels with the improvements thereon, annexed to the freehold, to be held in severalty.
The court is further of opinion, that although it is said that some of the tenants in common have held portions of the common subject for their separate use, yet it is not so alleged in the pleadings or shown by the proof in the record as it now stands, as to justify the court in deciding whether such separate use was had, or if had, whether it was under circumstances to require an account of rents and profits. That although it is also said that permanent improvements adding to the present value of the common subject, have been made by some of the parties now before the court, or those under whom they claim, and to whose rights to compensation they succeed, yet there is not enough in the pleadings and proof on which to found a decree; that this court cannot at this time give any directions for an account of rents and profits, or of improvements, but must leave these subjects to be acted on by the Circuit court hereafter, if the parties in interest shall bring them or either of them to the notice of the court in a manner for judicial action.
The court is further of opinion, that the decree of the Circuit court, so far as it is in conflict with the principles herein declared, is erroneous, and that there is no other error therein. It is therefore adjudged, ordered and decreed, that so much of said decree as is declared to be erroneous, be reversed and annulled, and the residue thereof affirmed; and that the appellants recover of the appellees their costs expended in the prosecution of their appeal in this court.