# CHESHIRE,

## JULY TERM, A. D. 1859

### MARTIN *v.* COLLESTER.

Where a debtor has an undivided share in several tracts of land descended to him from his ancestor, and his creditor has against him two executions, and at the same time levies one execution on the whole of the debtor's interest in one tract, and the other execution on the whole of his interest in all the other tracts, the levy, being in other respects duly made, is valid.

WRIT OF ENTRY, for one undivided fifth part of two tracts of land in Marlborough.

On the 22d of September, 1849, John Converse died seized of three tracts of land; leaving a widow and five children, of whom Gilman Converse was one. On the same day all the interest of Gilman in the real estate was attached on two writs in favor of Daniel Reed; and, later in the same day, on writs in favor of Nelson Converse and John Towns. Before judgment was rendered in either of said suits, the whole of one of the above mentioned tracts of land, and a portion of another tract known as the homestead, were assigned to the widow of John Converse for dower.

On the 26th day of September, 1850, Reed recovered judgment against Gilman in one suit for $177.95, in the other for $182.33. Nelson Converse and Towns also recovered judgment; and on the 28th day of January, 1851, Gilman's one undivided fifth of the home farm, excepting the portion assigned to the widow for dower, was set off to Reed at $194.81, in full satisfaction of his first execution; and one undivided fifth of the second tract described in the declaration was set off to him at $78, and all the estate of Gilman, " after the decease

of the widow," in two other tracts, one a portion of the home farm, the other a tract of land containing seven and one half acres, was set off to him at the sum of $70— in part satisfaction of his second execution.

On the 18th day of April, 1851, the execution in favor of Nelson Converse was levied upon Gilman's interest in all the real estate which he held in common and undivided with the other heirs. In this levy the different tracts are treated as separate and distinct, the home farm being described by metes and bounds, as it existed after the dower had been set off, the other lots by their boundaries. The appraisers found the debtor's interest in the one fifth part of two of the tracts, and one fifth part of the reversion of the other two tracts after the widow's decease, to be of the value of $350, and set off twenty-two thirty-fifth parts of the fifth to said creditor. On the same day the execution in favor of John Towns was levied in the same manner, and thirteen thirty-fifth parts of the undivided fifth part were set off to him.

On the 26th day of February, 1851, Reed conveyed to the demandant the demanded premises, being the home farm, the widow's dower excepted, and the nineteen acre lot; and later in the same year the tenant acquired by deed all the interest of Nelson Converse and Towns, and of the other heirs, and since the commencement of this action, all Gilman Converse's interest in all the lands.

*Cushing*, for the plaintiff.

*Wheeler & Faulkner*, for the defendant.

PERLEY, C. J. On the 22d of September, 1849, John Converse died intestate, seized of his homestead and two other tracts of land, leaving Gilman Converse and four other children, his heirs at law. Afterwards, on the same day, Daniel Reed attached the interest of Gilman Converse in all the land on two writs, and, later in the same day, Nelson Converse and John Towns made separate

attachments of the same. Pending these attachments one of the tracts of land and part of the homestead were assigned to the widow of John Converse, for dower.

Reed recovered judgment in one of his suits for $177.95, and in the other for $182.33 ; and within thirty days and on the same day levied the first execution on Gilman Converse's undivided fifth part of that portion of the homestead which had not been set off for dower, at the appraised value of $194.81, in full satisfaction of that execution, and the second execution on the debtor's undivided fifth part of the other tract, not set off for dower, at $78; and also on his undivided fifth of the reversion of the widow's dower in both tracts, at $70, in part satisfaction of the second execution.

Nelson Converse afterwards levied his execution on twenty-two thirty-fifths of Gilman's undivided fifth in all the lands, in full satisfaction, and Towns levied his execution on thirteen thirty-fifth parts of the same, in part satisfaction.

The demandant has the title derived under Reed's levies, and the tenant has the title derived under the levies of Nelson Converse and John Towns.

If the levies made by Reed are held to be valid, they give the demandant the whole of the undivided fifth of Gilman Converse in all the land, and the tenant, if his title prevails, will hold exactly the same interest. In either case the other co-parceners will hold with the tenant or with the demandant as they would have held with Gilman Converse if he had retained his interest, and they will have the same remedy for partition in either case.

The legal objection to a levy on the undivided interest of a co-parcener in part of the land is not founded on any provision of the statute which authorizes the levy, but has been allowed upon the ground that such a levy is inconsistent with the rights of the other co-parceners. The objection is founded not on the form but on the substance and effect of the levy, which deprives the other co-parcener of his right to partition in all the land. This is the ground

upon which the decisions have been put in all the cases. *Porter* v. *Hill*, 10 Mass. 34 ; *Bartlett* v. *Harlow*, 12 Mass. 348 ; *Varnum* v. *Abbot*, 12 Mass. 474 ; *Peabody* v. *Minot*, 24 Pick. 333 ; *Howe* v. *Blandin*, 21 Vt. 315 ; *Thompson* v. *Barker*, 12 N. H. 563.

And where this reason does not apply, separate levies may be made on the parcener's undivided interest in different parts of the land ; as, where the land lies in different counties, and separate processes for partition may be maintained ; and one levy may be made on land in possession, and another on land in reversion, for the same reason. *Peabody* v. *Minot, qua supra.*

So it would seem that, though the levy may be void at the time when it is made, yet if afterward titles become united, so that the other co-parceners hold with one owner in all the land, and can have partition as they could have had it with the debtor, the levy is valid, inasmuch as the co-parcener suffers no injury, and the debtor has no ground of complaint. *Bartlett* v. *Harlow*, 12 Mass. 354; *Howe* v. *Blandin*, 21 Vt. 315.

Reed, by his levies made on the same day, took the same interest in all the lands that he would have taken if he had levied each of his executions on an undivided interest in all the land, and the demandant holds the same interest under that title. Neither the debtor nor the other cotenants are injured or can complain, and the objection to these levies cannot prevail.

It is said that the levies, being separate, the debtor might redeem one, and leave the title under the other to become absolute, and that this would divide the estates inconsistently with the rights of co-parceners. But the estate vests in the creditor, upon the levy, subject to the legal condition that it may be defeated by payment of the appraised value. The title is in the creditor till it is revested in the debtor by payment of the appraised value. The objection being made on account of the co-parceners, they cannot complain until there is a redemption. Whether the effect of redeeming part would be to defeat the whole title, it is not now necessary to inquire.