## DRAKE v. WISE.

Minor: ESTOPPEL OF. A father, acting as the guardian of his minor son, made partition of lands between him and the adult co-owner. Subsequently the father, continuing to so act for his son, but without any lawful authority, sold and conveyed the portion set off to him to a third party. The minor, after attaining his majority, with knowledge of all the facts, executed to such third party a quit-claim for the portion conveyed to him by the father. *Held*, that the minor was estopped from asserting any interest in the portion allotted to the adult co-owner.

*Appeal from Winneshiek District Court.*

TUESDAY, JUNE 4.

THE plaintiff brings this action for partition of forty acres of land described in the petition, alleging that he and the defendant are owners in common thereof.

The answer of defendant denies plaintiff's alleged title and sets up an equitable defense, upon which the cause was tried by the court, and judgment rendered for plaintiff for partition, as prayed.

Defendant appeals. For the further facts see the opinion.

*L. Bullis* for the appellant.

*G. R. Willett* for the appellee.

Miller J. — The evidence established these facts, namely : In 1853, Nathan Drake and his father, N. S. Drake, purchased and paid for 160 acres of land, including the tract in controversy. The title to the land was taken in the names of Nathan Drake and his brother, Aaron H. Drake, the plaintiff, who was then a minor about 14 years of age, living with his father, who acted for him in this matter. The plaintiff paid no part of the consideration for the lands and has never paid any taxes thereon ; Nathan Drake paid one-half of the purchase-money of the land, and has since paid the taxes on the interest claimed by him therein until conveyed by him. Subsequently to the purchase and in the same year (1853) Nathan Drake and N. S. Drake, acting for the plaintiff, by a parol agreement divided the land, in which division the father took for the plaintiff the west two forty-acre. tracts, and Nathan Drake took the east two forties ; that upon such division Nathan Drake took possession of the part assigned to him, and ever since, up to the time of conveying the same, claimed to own it in his own right; that N. S. Drake for plaintiff did the same in respect to the west two forties.

No deeds or writings were made by Nathan or N. S. Drake for the purpose of carrying this partition into effect. Subsequently to the partition N. S. Drake, in his own name, deeded the west two forty-acre tracts to Oscar Dexter, by two deeds, one dated August, 1853, and the other dated September 18, 1853. In making these deeds N. S. Drake acted for his son, the plaintiff, but had not been appointed his guardian. The plaintiff testifies that he had chosen his father his guardian.

It further appears from the evidence that the plaintiff, after he became of full age, and with the knowledge that his father had sold these two forties as his (plaintiff's) land, execu-

ted a quit-claim deed, through his duly appointed attorney in fact, Nelson Burdick, of the same land to Elias Bassett, who had purchased the same of Dexter, the grantee of N. S. Drake. This deed was dated April 29, 1862, and filed for record July 2, 1862, and was intended by the plaintiff to cure the infirmity of the title attempted to be conveyed by his father as his guardian to the land deeded tò Dexter. There was no other consideration for this quit-claim deed, Dexter having paid a valuable consideration therefor at the time of his purchase thereof from plaintiff's father.

The defendant is the grantee of Nathan Drake for one of the east forty-acre tracts, which is the land in controversy, the plaintiff claiming to be still the owner of one undivided half thereof. Nathan Drake and his grantee have always since the said division claimed to own this forty and have paid all the taxes thereon, and have continued to exercise acts of ownership over it. The evidence also satisfies us that the plaintiff at the time of making his quit-claim deed, for the purpose of perfecting the title of his father's grantee to the west two forties, had full knowledge of the division which his father and his brother Nathan had made of the land; that he knew the west half of the quarter section had been set off as his property in severalty, and the east half set off in like manner to his brother. The evidence also shows that the plaintiff never made any claim to the land in controversy until a short time before this suit was commenced.

In our opinion the quit-claim deed of the plaintiff to Bassett operated as a ratification of the acts of N. S. Drake, in conveying the land to Dexter, the grantor of Bassett. By that deed the plaintiff approved and confirmed his father's conveyance of his (plaintiff's) land. The father had never claimed any title to the land himself. In selling it he acted for the plaintiff, and sold it as the plaintiff's property, and as the plaintiff himself testifies, the father agreed to purchase for the plaintiff another "eighty in the bottom," in lieu of that sold to Dexter.

While it is clear that neither the parol partition nor the con-

veyence by the father, of the west half of the quarter section to Dexter, at the time, bound the plaintiff or affected his interest in the whole tract, yet by his subsequent quit-claim deed ratifying the sale thus made, and the entire consideration of one-half of the whole tract being received by his father, as belonging exclusively to the plaintiff; together with his long continued silence and acquiescence in the acts of his father, done in his behalf, respecting the land, and with the knowledge that his brother, relying on the parol partition, claimed to be sole owner of the east two forties, and made no claim whatever to the others in which he was originally an owner in common, the plaintiff is now estopped from asserting title to the land in dispute. By ratifying the sale made by his father of one-half of the land, he made that act his own. He will not be permitted, after having appropriated one-half the land to his own use, now to claim a one-half interest in what is left, being originally entitled only to a one-half interest in the whole. In support of this conclusion see *Duncan* v. *Sylvester*, 16 Me. 388; *Miller* v. *Miller*, 13 Pick. 237; *Varnum* v. *Abbott*, 12 Mass. 474.

The judgment of the court below will be

