JOHN Y. DAVIS *v.* JAMES H. CALDWELL and others.

The court will not lend its aid to settle disputes relative to contracts, or transactions reprobated and forbidden by law.   It will notice, *ex officio*, the illegality of the subject.

The grant by the legislature of a privilege to raise money by lottery, without any limit as to time, may be restricted by a subsequent law, before any rights have been acquired under the first.   The permission to draw a lottery is not, *per se*, a contract ; and until it has been accepted, and rights have been acquired under it, is entirely within the control of the legislature.

Davis v Caldwell and others.

APPEAL from the Parish Court of New Orleans, *Maurian*, J.

BULLARD, J. The plaintiff sues the defendants for a remuneration for services rendered by him in aid of their project to draw a lottery in 1839 ; and the defendants are appellants from a judgment condemning them to pay a small sum. We stopped the counsel for the plaintiff and appellee in his argument, and called his attention to the fact that lotteries were prohibited at that time by legislative authority, and that there could be no valid contract in relation to the drawing, or preparation to draw any lottery whatever, whereupon, the case was submitted without further argument. Upon looking at the points filed by the appellees, we find that this ground was taken ; but if it had not been, we should consider it our duty to notice it as a peremptory exception, and not to lend the aid of the court in settling disputes relative to contracts and transactions forbidden by law.

Numerous privileges were granted by the legislature formerly to raise money by means of lotteries, in furtherance of some objects of public importance. In most instances, the time within which the privilege might be exercised was left indefinite, and, in 1833, the legislature thought proper to enact that the privilege of drawing lotteries, theretofore granted by different acts of the legislature, should expire on the 1st of January, 1834 ; and declared the act of selling a lottery ticket, or drawing a lottery highly penal, and punishable by fine and imprisonment. In 1838, an amendatory act was passed, extending the prohibition to all lotteries whatever, and by whomsoever authorized. Bullard & Curry's Digest, 547.

The record shows that the defendants, in defiance of these prohibitions, project a scheme for a great real estate lottery in the city of New Orleans, under what pretended authority we are not informed. This is shown by the correspondence between the parties. In a note addressed by the plaintiff to one of the defendants, he says : " Understanding that you are about to establish a real estate lottery in this city for the ensuing season, I beg leave to offer you my services in the sale of tickets, and in any other way in which I can be useful. I am about leaving the city for the north, to return about the first of October ; could I be of service to you while absent, it would afford me great pleasure to

receive your commands." In answer, one of the defendants requested to be informed on what terms the plaintiff would be willing to give his undivided attention to the contemplated lottery, and the plaintiff named $3500. A letter signed by the three projectors of the lottery, shows that such a lottery was set on foot by them, and that disputes had arisen in relation to the services of the plaintiff.

Under whatever pretext of right or authority this lottery was got up, it was clearly prohibited by law. It must have been under some supposed grant of the State previously to 1833, or under the assumed authority of some other State or Territory, or upon the mere personal authority of the defendants. On the two last suppositions, it is impossible to doubt its illegality. Upon the first, it may be urged that a privilege once granted, could not be revoked by the legislature; and that the law of 1833 was unconstitutional and void. The question, whether a grant of a privilege to raise money by lottery, at first indefinite in point of time, may be afterwards limited, before any rights have been acquired under the first grant, is one which, we think, presents no difficulty. Such an act does not, in our opinion, impair the obligation of a contract, nor destroy any vested rights The permission to draw a lottery is not, *per se*, a contract, and until it has been accepted, and rights have been acquired under it, is perfectly within the control of the legislature; and the time within which it may be exercised, may well be determined by a subsequent law, without any violation of principles or rights.

The contract sued on being intimately connected with a speculation reprobated and forbidden by law, cannot be enforced in a court of justice. *Ex turpi causa non oritur actio.* 3 Mart. N. S. 46. 17 La. 118.

It is therefore ordered that the judgment be reversed, and that ours be for the defendants with costs in both courts.

*Claiborne* for the plaintiff. No counsel appeared for the appellants.