JOSEPH E. FREDRICK *et al.*

*v.*

JOSEPHINE FREDRICK *et al.*

*Opinion filed February 21, 1906.*

1. WILLS—*will construed as to when a request to sell is signed by majority of children.* Where a will requires a majority of the testator's children to sign a written request to the trustee to sell land, neither the trustee nor the party to whom the sale was made, though they are both children of the testator, should be counted in determining whether a majority of the children signed.

2. SAME—*tenant in common cannot devise her interest in a specific part of entire property.* Where husband and wife are co-tenants of an entire tract of land, including the part occupied as a homestead, which is not an aliquot part of the entire tract, the wife cannot, as against her co-tenant, devise to other persons "the use of the homestead" during their natural lives.

3. TRUSTS—*trustee's actions in conducting sale must be fair to all beneficiaries.* A sale by a trustee of property in which a large number of beneficiaries are interested should not be had without notice to each person interested, and if conducted clandestinely and made to one of the beneficiaries at a low price, without giving any other person a chance to bid, the sale should be set aside.

4. APPEALS AND ERRORS—*alleged error in interlocutory action cannot be reviewed.* The action of the trial court in postponing the consideration of the question of equalizing legacies under a will until after a re-sale of the property by the trustee had taken place is interlocutory, merely, and is not subject to review on appeal or writ of error to review the decree ordering the re-sale.

WRIT OF ERROR to the Circuit Court of Will county; the Hon. DORRANCE DIBELL, Judge, presiding.

KNOX & AKIN, for plaintiffs in error.

DONAHOE & McNAUGHTON, BENJAMIN OLIN, C. W. BROWN, and JAMES A. McKEOWN, for defendants in error.

Per CURIAM: In the year 1900 Joseph and Sarah Fredrick, husband and wife, were the equal joint owners of a tract of seventy-five acres of land, a portion of which was situated within the corporate limits of and the balance adjoined the city of Joliet, in Will county, and upon which they resided as a homestead. Sarah Fredrick died on September 15, and Joseph Fredrick on November 17 of that year, testate, and leaving them surviving eight children, namely, Joseph E. Fredrick, Frank E. Fredrick, Oswald J. Fredrick, Sarah A. Bossom, William W. Fredrick, Josephine Fredrick, Adeline A. Fredrick and Charles A. Fredrick, all adults. William W., Josephine, Adeline A. and Charles A. were unmarried at the time of the death of said Sarah and Joseph Fredrick and made their homes with said Joseph and Sarah Fredrick upon said premises. Sarah Fredrick, by her will, which bore date June 12, 1900, after providing for the payment of her debts and funeral expenses and making certain bequests of her personal property, the validity of which is not here involved, devised said real estate to six of her children, as follows: To Oswald J. an undivided four twenty-eighths interest; to William W. an undivided six twenty-eighths interest; to Josephine an undivided five twenty-eighths interest; to Adeline A. an undivided five twenty-eighths interest, and to Charles A. an undivided four twenty-eighths interest, and provided in the event of either of said children being dead at the time the will went into effect, the share of the deceased child should go to the survivor or survivors of said named children. The remaining four twenty-eighths of said real estate was devised to Charles A. and William W. in trust, as follows:

"That they shall manage the same as their judgments may deem best, to sell, convey and re-invest or otherwise control so as to produce the most satisfactory results by way

of income or investment possible, giving them all the power necessary or requisite for that purpose, and from the principal of said four twenty-eighths (4/28), or the income thereof, to pay, from time to time, to my son Frank such a sum or sums as my said trustees shall deem wise or proper, the intent being that my son Frank shall receive no portion thereof excepting such an amount or amounts as my said trustees shall deem best or prudent. And provided further, that in the event of the death of his present wife, Margaret, or in the event of an absolute divorce between them, then my said trustees shall transfer, convey or turn over to my said son Frank such portion of the property so conveyed to them in trust as shall then remain in their hands. In the further event of the death of my said son Frank prior to the death of his said wife and prior to such absolute divorce, then said above property so conveyed in trust I devise and bequeath to my said children, Josephine, Adeline, William, Charles and Oswald, or the survivor or survivors of them, share and share alike. I desire, however, in the contingency of the death of my said son Frank, and that his son Harold be left surviving, that my trustees may, as a purely voluntary matter, pay to my said grandson, son of my said son Frank, such a sum or sums as they may deem prudent or wise. The power and authority conferred upon my said sons as trustees I desire to be exercised by the survivor in the case of the death of one, and in the event of the death of both, either before or after my death, then I desire that some fit person be appointed by a court of competent jurisdiction as such trustee, who shall take title to said four twenty-eighths (4/28) of my said real estate, or the proceeds thereof, and be vested with the same power and authority above conferred upon my sons so named as trustees."

By the eighth paragraph of the will, Josephine and Adeline A., or the survivor, were given the use, occupancy and possession of said real estate during the life of their father, Joseph Fredrick, and the wish was expressed by the testa-

trix that William, Charles and Oswald might have a home upon the premises with the daughters, if they so desired.

On August 8, 1900, Sarah Fredrick executed a codicil to her will, which, in part, reads as follows:

"*First*—I direct and devise the use of the homestead, and all the furniture therein as it now is, to my daughters Josephine and Adeline and my sons William and Charles, to be used, occupied and enjoyed by them during their natural lives, and to the survivor or survivors during his, her or their natural lives, said homestead meaning the house, yard and buildings as now occupied by the family. Subject to this modification and provision only, I desire and direct that my foregoing will stand in all respects as therein written. "

Charles A. Fredrick was named as executor therein, and the will and codicil were admitted to probate on February 5, 1901, and Charles A. Fredrick qualified as executor.

Joseph Fredrick, by his will, which bore date December 14, 1893, after directing that his debts and funeral expenses be paid by his executor, gave, devised and bequeathed all the rest, residue and remainder of his estate, real, personal and mixed, to Charles A. Fredrick as trustee, and provided that his wife should have the net income thereof during her life; that after the death of his wife said trustee should handle the estate in such manner as in his opinion would be for the best interests thereof, and that the net income thereof should be added to and become a part of the estate and held in trust by the trustee and distributed by him as provided by the will; that the real estate should not be sold during the life of his wife unless necessary to pay debts or current expenses of the estate, and then only so much should be sold as should be necessary for those purposes.

The fifth paragraph was as follows: "It is my wish that my estate be closed up as soon as it is advantageous so to do, and at all events within ten (10) years after my said wife's death, the time for disposing of my estate to be decided as follows: Whenever, after my said wife's death, all

of my children hereinafter mentioned that are then living and of sound mind and memory shall consent or make written request of my said trustee, he must then convey or otherwise dispose of and distribute the same as soon as favorable opportunity offers; but my said trustee shall also have the power to sell, convey or otherwise dispose of all or any part of my estate at any time or times after my said wife's death, upon the written agreement, request or consent of a majority of said hereinafter mentioned children that are then living and of sound mind and memory, provided it shall, in the opinion of my said trustee, appear expedient or advantageous so to do, it being my intention that in determining the opportune time or times for disposing of my estate upon request or consent of less than all of my said children my said trustee shall concur therein, and no sale or other disposition thereof shall be made unless, in his judgment, it may seem advantageous to the estate so to do, unless by the unanimous request or consent of all my said children, and in that case my said trustee shall have no voice in the matter other than advisory, and shall comply with said request forthwith, when made in writing and signed by all my said children. My purpose in thus providing how the time for the disposal of my estate shall be decided upon is, that the same may not be sacrificed or sold below its value at the election of less than a majority of my said children."

The will then provided when the time arrived for the division of the estate the same should be distributed by the trustee as follows: To Josephine Fredrick, $1000; to Leonard H. Fredrick, son of Joseph E. Fredrick, $500; to Oswald J. Fredrick, $500; to Frank E. Fredrick, $500; to William W. Fredrick, $500; to Charles A. Fredrick, $2000,—said money legacies in all amounting to the sum of $5000. The testator gives as his reasons for making said bequests, his desire "to equalize among them all advances heretofore made by me, so that with the special bequests and their respective shares in the residue of my estate their inheritance will,

considering former advancements, be as near as may be of equal value."

Paragraph 10 of the will reads: "I direct that all the rest and residue of my estate, both real and personal, shall be distributed by my said trustee between all my following named children, Joseph E. Fredrick, Charles A. Fredrick, Oswald J. Fredrick, Frank E. Fredrick, William W. Fredrick, Sarah Bossom, (wife of Thomas Bossom,) Josephine Fredrick and Addie A. Fredrick, share and share alike: *Provided, however,* that if my said wife shall die testate or shall in any manner distribute her separate estate otherwise than equally between all my said children, then it is my wish, and I hereby direct, that my said trustee shall distribute my estate so as to equalize, in his opinion, as near as possible to each one of my said children any unequal distribution my said wife may make of her separate estate, both real and personal, either before her death or by will, deed, bequest, gift or otherwise, so far as the same may come to the knowledge of my said trustee, it being my intention that my said trustee shall give to each of my said children such portion of my estate as, when added to the amount or value of the portion distributed to each one of said children by my said wife out of her separate estate, shall give to each and all of our said children equal shares from my residue separate estate, and the entire separate estate, both real and personal, of my said wife conjointly to share alike, as near equally as is possible, in the opinion of my said trustee, to make them under the then existing circumstances."

The will further provides: "In case of the death of my said children herein named, previous to the distribution of my estate, the share of my estate to which such deceased child or children would be entitled to under the provisions of this my last will and testament shall be distributed to the lawful heirs or assigns of such deceased child or children."

Charles A. Fredrick was named executor and the will was admitted to probate February 5, 1901, and he qualified

as executor. Prior to February 21, 1901, (the record does not show the exact date,) Frank E. Fredrick, William W. Fredrick, Josephine Fredrick and Adeline A. Fredrick, under the provisions of the fifth paragraph of Joseph Fredrick's will, in writing requested Charles A. Fredrick, as trustee, to sell the real estate of which the said Joseph Fredrick died seized. On that day Charles A. Fredrick, in writing, consented and agreed, as such "trustee and beneficiary," to the sale, and on March 7, 1901, without having conferred with Joseph E. Fredrick, Oswald J. Fredrick or Sarah A. Bossom, or without notice to either of them, he sold the interest of which said Joseph Fredrick died seized in said seventy-five acres, to his brother William W. Fredrick in consideration of the payment to him of the sum of $11,250, which was at the rate of $300 per acre, and executed and delivered to William W. Fredrick, as such trustee, a deed conveying the interest of which Joseph Fredrick died seized in said premises to said William W. Fredrick, which deed was filed for record and recorded in the recorder's office of Will county.

On March 7, 1901, the day on which said deed bears date and upon which the sum of $11,250 was paid to Charles A. Fredrick by William W. Fredrick, Charles A. Fredrick filed a bill in chancery in the circuit court of Will county against all his brothers and sisters and Harold and Leonard H. Fredrick, alleging he had made said sale and had the proceeds arising therefrom in his hands, as trustee; that all the debts against the estate of said Sarah Fredrick, deceased, and Joseph Fredrick, deceased, which consist only of funeral expenses, had been paid; that there was no personal property in his hands belonging to either of said estates; that he desired to distribute, under the terms of the will of Joseph Fredrick, the proceeds of the sale of said real estate between the beneficiaries named in said will; that by reason of the contingent interest of Frank E. Fredrick in Sarah Fredrick's estate, and the interest given to Adeline A. Fredrick, Josephine Fredrick, William W. Fredrick and

Charles A. Fredrick in the portion of said premises belonging to Sarah Fredrick which had been occupied by Joseph and Sarah Fredrick, during their lives, as a homestead, it was uncertain what amount each of the beneficiaries under the will of Sarah Fredrick, deceased, would receive from her estate, and uncertain what the beneficiaries under the will of Joseph Fredrick, deceased, should receive from the moneys in his hands as trustee, and prayed that the wills of Sarah and Joseph Fredrick, deceased, respectively, might be construed and the respective interests of the parties in said fund in his hands derived from the sale of said real estate be determined, to the end that it might be divided and distributed in accordance with the law and the rights of the parties. Answers and replications were filed, and the cause being at issue, on April 17, 1901, Joseph E. Fredrick filed a bill in chancery in the circuit court of said Will county against William W. Fredrick and Charles A. Fredrick, for the purpose of canceling and setting aside the sale to William W. Fredrick by Charles A. Fredrick, as trustee, of the interest of which said Joseph Fredrick, deceased, died seized in said seventy-five acre tract of real estate, on the ground that the sale was made by the trustee without authority, that the consideration received therefor was inadequate and that the sale was made through fraud. Answers and replications were filed, that case being also at issue.

At the May term, 1902, of said circuit court, said cases, —that is, the case begun by Charles A. Fredrick to obtain a construction of the wills of Sarah Fredrick, deceased, and Joseph Fredrick, deceased, and the case commenced by Joseph E. Fredrick to set aside the sale made by Charles A. Fredrick, as trustee, to William W. Fredrick,—were by the order of the court consolidated and from that time forward proceeded in that court as one case, and the court, upon a full hearing in open court, entered a decree canceling and setting aside the sale made by Charles A. Fredrick, as trus-

tee, to William W. Fredrick, and held that the codicil to the will of Sarah Fredrick, deceased, was a valid devise of the undivided one-half part of the premises which had been occupied by her and her husband as a homestead, to the persons named in said codicil during their lives or the survivor thereof, and that Oswald J. Fredrick was the absolute owner of that part of said seventy-five acres upon which he and his family resided, the same being a lot fifty-two and four-twelfths feet wide by one hundred and fifty feet deep, fronting upon Raynor avenue, in the city of Joliet, and that, as subsequent to the setting aside of said sale there were no funds then in the hands of said trustee, as the proceeds of the sale of the real estate of Joseph Fredrick, deceased, to be distributed under the terms of his will and with which to equalize legacies under paragraph 10 of his will, the decision of the question of whether it was possible to equalize the legacies of all the children of Joseph Fredrick, deceased, as directed by his will, so that the amounts received by each of said children from the estates of Sarah and Joseph Fredrick, deceased, should be equal, should be held in abeyance until after a re-sale of said premises, as before a re-sale of said premises should be had such changes might occur as to make it practicable to effect such equalizations, under the provisions of said will, without difficulty; and the court, for the purpose of subsequently disposing of said questions after the re-sale of said premises, retained jurisdiction of the case of Charles A. Fredrick to obtain a construction of said wills, and declined to determine whether or not the provisions of the will of Joseph Fredrick, deceased, requiring the surplus of his estate remaining after the specific legacies therein directed to be paid had been paid, to be used to equalize the legacies received under his will and under the will of Sarah Fredrick, deceased, so that each child would receive an equal amount from the two estates, was a valid provision, or whether it was void by reason of the uncertainty of the provisions made for Frank E. Fredrick in the original will or

by reason of the interests transferred by the codicil to the will of Sarah Fredrick to the children named therein.

Adeline A. Fredrick departed this life testate, subsequent to the commencement of said suits, leaving her surviving as her sole heirs-at-law, her brothers and sisters. By her will, which was admitted to probate July 15, 1901, Charles A. Fredrick was appointed her executor, and thereby she devised to her brothers Charles A. and William W., and her sister Josephine, her entire estate.

A writ of error has been sued out to reverse said decree, and Joseph E. Fredrick, Oswald J. Fredrick and Sarah A. Bossom, the plaintiffs in error, have assigned errors, and Frank E. Fredrick, William W. Fredrick, Josephine Fredrick, Charles A. Fredrick, Harold Fredrick and Leonard H. Fredrick, the defendants in error, have assigned cross-errors, and the contentions of the respective parties will be disposed of regardless of the order in which they are presented in the briefs.

*First*—In his will Joseph Fredrick expressed a wish that his estate be closed up so soon after his wife's death as it advantageously might be done, and directed that it be closed, in any event, within ten years after her death. He also provided that his real estate might be sold at any time after his wife's death upon the request of all of his children, and that upon the request in writing, to the trustee, of all of his children after his wife's death, it should be the duty of the trustee to make sale of his real estate; and upon a like request in writing, to the trustee, of a majority of his children, if the trustee acquiesced in such request, the trustee should have the power to make sale of the real estate. Joseph Fredrick died November 17, 1900. His wife had died on the preceding 15th day of September. His will was admitted to probate on the 5th day of February, 1901, and prior to the 21st day of that month four of the children, Frank E., Josephine, Adeline A. and William W. Fredrick, requested, in writing, the trustee to sell said real estate. On the 21st

219—37

of February Charles A. Fredrick, as trustee and as a beneficiary under his father's will, approved, in writing, said request, and upon the 7th of March following, he sold and conveyed said premises to his brother William W. Fredrick for the sum of $11,250 by virtue of said request. Josephine, Adeline A., William W. and Charles A. Fredrick lived together upon the premises. Frank E. lived near by, as did Joseph E., Oswald J. and Sarah A. The consent was signed by Frank E., Josephine, Adeline A. and William W. when Charles A. was present. He did not confer with his brothers Joseph E. and Oswald J., or his sister Sarah A., or her husband, with reference to the sale of said premises, but says he carried the request in his pocket for a few days and then signed it, and on the 7th of the following March executed and delivered to William W. Fredrick a deed for said premises and received in cash the consideration for the sale. The request, under the will, was required, in order to authorize a sale, to be signed by at least a majority of the children of Joseph Fredrick, deceased. He left in number eight children, four, only, of whom signed the request. If the trustee is to be counted as having signed, it was then signed by five children. We think, however, when the entire paragraph of the will which provides for the sale upon the request of a majority of the children is read, it is apparent that the testator did not contemplate that Charles A., the trustee, should sign the request as a child and thereby make a majority in favor of a sale and then approve the request as trustee, but that he contemplated that the request should be signed by a majority of his children other than Charles A., the trustee. In determining the number of signatures necessary to authorize a sale Charles A. should therefore be eliminated and the request should be signed by a majority of the remaining children. At the time the request was signed there were seven children, not counting said Charles A. Four of these signed, which would make a majority of the seven. The trial court held, however, and we think correctly, that the sig-

nature of William W. to the request should not be counted, as he was interested in procuring the sale to be made, in the sense that he was the person to whom the sale was to be made.

It is contended that the evidence does not justify the inference that when the consent was presented to the trustee, William W. was to be the purchaser. William W. and Charles A. lived in the same house. No notice of the salè was given to other parties who might have desired to purchase. The brothers and the sister who did not sign the request did not know a sale was contemplated and did not hear of the sale until it was consummated. There was no urgent necessity for an immediate sale. On the day the sale was consummated a bill to determine how the proceeds of the sale should be distributed was filed by Charles A., and William W. and the other parties who signed the request immediately entered their appearances. These facts, and others disclosed by this record, show, we think, that from the time the request was signed until the deed was made the trustee and the parties who requested the sale to be made were acting together and in opposition to the other children, and that it was understood between the trustee and the parties who signed the request that William W., or some other one of their number, should be the purchaser and obtain title to the land from the trustee. The property in question is situated in and immediately adjoins the corporate limits of the city of Joliet. The streets upon the north and east sides of the property are paved. The property located north, east and south of said seventy-five acre tract is subdivided and largely built upon. Street car lines are built from the heart of the city to within a short distance of said property. A large number of witnesses testified as to the value of said real estate at the time of the alleged sale. They fixed the value at from $250 to $700 an acre. The court saw and heard the witnesses, and reached the conclusion, which is incorporated in the decree, that the property was well worth all it brought,

and upon a re-sale might bring more than it was sold for
by the trustee.  The property unquestionably has a value
for subdivision purposes, and what property situated simi-
larly to this will bring at an advantageous sale is always
problematical and difficult to determine.  We think from the
evidence it is plain that this property was sold at a very low
figure, and that it is but fair to Joseph E., Oswald J. and
Sarah A. that the sale should be set aside and the property
re-sold after notice to them that a sale is to be made.  A
trustee should not clandestinely put through a sale of prop-
erty situated like this, in which a large number of persons
are interested, without giving to each person notice of the
fact that a sale was contemplated and about to be made, and
where a sale is thus made to one of the beneficiaries without
giving the other parties in interest a chance to bid on the
property or find a purchaser for the property, the sale should
be set aside.

*Second*—It appears that many years ago, and at the time
Oswald J. Fredrick was about to be married, Joseph and
Sarah Fredrick, who then owned the real estate now in
question, gave to him a lot on the east line of said property,
fronting upon the street which borders said property upon
the east; that they assisted him in measuring the lot; that
he took possession thereof and fenced the same and built
thereon a house and other improvements, since which time
he and his family have resided, and now reside, upon the lot
as their home.  The court found and decreed that said Os-
wald J. Fredrick was the owner of said lot in fee, and that
in the settlement of the estate of Sarah and Joseph Fredrick,
deceased, he ought not to be charged with the value of said
lot.  It is assigned as cross-error that the portion of the de-
cree which finds said lot to be the property of Oswald J.
Fredrick is not supported by the evidence, and in the follow-
ing particular that cross-error is practically confessed by the
plaintiffs in error:  It appears from the description of the
lot found in the decree that it is about fifty-two feet farther

south, fronting upon Raynor avenue, than the testimony of the witnesses who give its location place it. The decree, therefore, so far as it designates and fixes the location of said lot is not supported by the evidence, and for the error indicated the portion of the decree fixing the location of the lot must be reversed.

*Third*—It also appears that near the north-west corner of the said seventy-five acre tract, the house, barn, etc., occupied by Joseph and Sarah Fredrick, during their lives, as a home, was situated. That portion of the premises was fenced, and within the fence were located about three or three and one-half acres. This is the portion of the premises covered by the devise to Joseph E., Adeline A., William W. and Charles A. Fredrick for life, contained in the codicil of the will of Sarah Fredrick, deceased. The trial court held the devise contained in the codicil to be valid. But with this we cannot agree. Joseph and Sarah Fredrick were tenants in common of the entire tract of seventy-five acres, including the house, barn and the ground on which they were located. The interest of each was an undivided interest in the whole, treated as an entirety, and not an undivided interest in each of as many parcels as he or she might choose to divide the common property into. Sarah did not own an undivided one-half of the three and one-half acres included in the homestead, any more than she owned an undivided one-half of any other specific part of the entire tract. If a tenant in common desires to dispose of his undivided portion of the common property or any part of such interest, he must do so by conveying the whole or some aliquot part of his undivided interest in all. If one tenant in common attempts to convey the whole or any part of any specific portion of the common estate, such conveyance is void, at least in so far as it is prejudicial to the interest of the other co-tenants. The grantee under such a conveyance may occupy the position of the grantor, but under no circumstance can his rights be any greater. Such a conveyance may be valid as against

the grantor, at least by way of estoppel, but not when such conveyance is prejudicial to the rights of co-tenants. (1 Cooley's Blackstone,—3d ed.—*194, note 13; 4 Kent's Com. 368; 1 Washburn on Real Prop. 417; 3 id. 587; *Peabody* v. *Minot,* 24 Pick. 329; *Benedict* v. *Torrent,* 83 Mich. 181; *Markoe* v. *Wakeman,* 107 Ill. 251.) Under these authorities Sarah Fredrick had no right to dispose of the whole or any portion of the three and one-half acres used as a homestead in such a way as to prejudice the rights of Joseph Fredrick or his beneficiaries. After the devise her devisees had no greater right than she had, and she was without power or authority to create a life estate in them to the detriment of her co-tenant. It certainly cannot be claimed that the life estate was not prejudicial and detrimental to the co-tenant in making an equitable distribution of his part of the property. The value of the life estate, if the devise was valid, would have to be taken into account by the co-tenant or beneficiaries, and would continue until the death of those owning it. This certainly would prejudice the co-tenant and his beneficiaries, and the codicil of the will making this devise was void and the circuit court erred in not so holding.

*Fourth*—It is finally urged that the court erred in not disposing of the question of the equalization of the legacies of the beneficiaries under the wills of Sarah and Joseph Fredrick, deceased, in accordance with the tenth paragraph of the will of Joseph Fredrick. It is contended, on the one hand, that paragraph 10 of Joseph Fredrick's will cannot be executed, and that it is void by reason of the uncertain amount devised by Sarah Fredrick to Frank E. Fredrick, and by reason of the uncertain value of the estate given by the codicil to the will of Sarah Fredrick to Josephine, Adeline A., William W. and Charles A. Fredrick; that is, by reason of the uncertain amounts which these devisees are to receive from the estate of Sarah Fredrick, deceased, it is impossible to equalize the amounts which said children will receive from the estate of Joseph and Sarah Fredrick when

added together.   On the other hand, it is contended that said paragraph 10 is valid and that its execution is a mere question of mathematics.   At the time the consideration of the question of the construction to be given to said paragraph 10 was before the lower court there were no funds in the hands of the trustee for distribution under paragraph 10 of Joseph Fredrick's will, and the court found that by the time the real estate had been re-sold by the trustee and there was a fund on hand to be distributed and with which to equalize legacies, such changes may have taken place that the objections to the equalization of said legacies under said paragraph 10 might be entirely removed and in consequence of such changes said paragraph easily capable of execution, in which event it should be executed, and then declined to pass upon the validity of said paragraph but held the question of its validity or the method of its execution, if valid, in abeyance and open for the further consideration and determination of the court.   The circuit court was doubtless wise in thus postponing the consideration of that question.   If, however, we thought otherwise, we would be powerless to review the action of the court in declining to pass upon and settle those questions at the time that it entered the decree appealed from, as the action of the court in postponing the consideration of those questions was merely interlocutory, and not final, and not subject to review in this court by appeal or writ of error.   *Eggleston* v. *Morrison,* 185 Ill. 577; *Thomson* v. *Black,* 208 id. 229.

The decree of the circuit court will be affirmed except as to the questions of the devise of the homestead and of the location of the lot decreed to be the property of Oswald J. Fredrick, and as to these questions the decree will be reversed and the cause remanded to the circuit court for further proceedings in accordance with the views herein expressed. Each party will pay his own costs in this court.

*Affirmed in part and remanded.*