## Summer, et al. v. Vinson, et al.

(Decided December 1, 1925.)

### Appeal from Trigg Circuit Court.

1. Joint Tenancy—Contract of Purchase of Share, Not Alleged to be in Writing, Presumed Oral.—A contract of purchase of joint tenant's share by cotenant, not alleged to have been in writing, will be presumed to have been oral.

2. Joint Tenancy—Purchases from Co-owner Must be Established by Substantial Evidence.—Joint tenant, asserting acquisition of title from co-owner by purchase, must establish such ownership by substantial evidence.

3. Joint Tenancy—Tenant in Possession Considered as Holding Whole Property for Joint Use of All Tenants.—One joint tenant in possession of common property is considered as holding the whole property for the joint use of all tenants.

4. Joint Tenancy—Contract by One Tenant, Without Authority of Co-owners, will Not Bind Co-owners.—An act or contract by one joint tenant respecting joint property, made without authority or consent of cotenants, will not bind or prejudicially affect the rights of co-owners.

5. Joint Tenancy—In Absence of Proof of Parol Purchase of Tenant's Interest, Title Presumed to Continue as Originally Vested.—In the absence of proof to sustain plea of parol purchase of joint tenant's interest, the presumption is that the title continued as it originally vested.

6. Joint Tenancy—Claimant by Adverse Possession Must Actually Oust Cotenants.—While a joint tenant may acquire title to the whole estate, or proportion thereof by prescription as against his cotenants, by disseizin or adverse possession, the disseizor or claimant by adverse possession must actually oust all cotenants or do some act sufficient to bring notice to his joint owners of his intention to hold or claim the entire estate against them, and thus start limitations running in his favor; seizin or possession of joint property by one joint tenant being in law the seizin of the others.

7. Joint Tenancy—Mere Living on Land Owned Jointly Not Sufficient to Start Limitations in Favor of Occupant.—The mere fact of living on tract of land owned jointly does not start the statute

of limitations running in favor of the occupant, for his possession is the possession of his joint tenants who have a right to rely on his holding for their use; the presumption being that his entry and possession was according to his rights and no more.

8.   Joint Tenancy—Joint Tenant's Possession Not Presumed Wrongful.—It is not presumed that a joint tenant in possession is wrongfully claiming title against his co-owners, but the converse is true.

9.   Joint Tenancy—Evidence Held Insufficient to Establish Adverse Possession.—Evidence held insufficient to establish adverse possession by joint tenants as against cotenants.

10.  Joint Tenancy—Tenant in Possession Required to Preserve Improvements and Pay Taxes.—A joint tenant in possession must do such things as are necessary to the preservation of the improvements on the property, and is required to repair buildings and fences and pay taxes.

G. P. THOMAS, THOMAS & McKINNEY and JOHN T. KING for appellants.

ROBERT CRENSHAW for appellees.

OPINION OF THE COURT BY JUDGE SAMPSON—Affirming.

James and Margaret Thomas were husband and wife, and previous to 1863 they resided together in Trigg county upon a large boundary of land owned by him. He died in February, 1863, having executed a will by which he devised different portions of his property to his wife and other members of his family. He left three sons surviving him, also a grandson, by a deceased daughter, named Vinson. To his son Carroll and the widow, Margaret, he willed a tract of bottom land supposed to contain 160 acres, but which, by actual survey, contained 172 acres. By the terms of the will they were joint tenants without right of survivorship. This is the land in controversy. The widow and Carroll moved on and jointly occupied the tract willed to them. They resided in the same house. The widow died in April, 1886, intestate. In the meantime Carroll had married and had a family residing with him and his mother. He died in February, 1922, survived by several children, now appellants. The other Thomas boys died survived by children and grandchildren, and they with Vinson are appellees on this appeal.

This suit was commenced in the Trigg Circuit Court by appellee J. H. Vinson, grandson of James and Mar-

gàret Thomas, to recover a one-fourth of a one-half of the tract of land devised by James Thomas to his widow Margaret and his son Carroll, in 1863, and the children of Carroll Thomas and their descendants were made parties defendant. The heirs of the other two Thomas boys interpleaded, claiming a share in the same property. The court adjudged Vinson and his co-plaintiffs entitled to recover, and the children and heirs of Carroll Thomas, who, up to the commencement of the action had been in possession of the entire tract, appeal seeking a reversal of the judgment.

The children and heirs of Carroll Thomas by their answer assert title to the whole tract upon two grounds: (1) by parol purchase from Margaret Thomas shortly before her death in 1886, the contract being between Carroll and Margaret Thomas, he agreeing, in consideration of her portion of the land, to take care of her the balance of her life, and to give her a decent burial, at his expense; (2) adverse possession by Carroll Thomas and his children from and after the death of Margaret, his mother, in 1886.

As the contract of purchase of Margaret's share of the land by her son Carroll in 1886 is not alleged to have been in writing, it must be presumed that it was oral. Appellants produced no evidence whatever to sustain this defense. Of course, one joint tenant may acquire title from his co-owner by purchase, but in order to establish such ownership the claimant must produce some substantial evidence, for it is a rule that one joint tenant in possession of the common property is considered as holding the whole property for the joint use of all tenants, and not for himself alone; and this is true although there is no contract between them that he should so hold, the law raising the presumption. It is likewise a rule of general application that an act or contract by one joint tenant respecting the joint property made without the authority or consent of his co-tenants, will not bind or prejudicially affect the rights of his co-owners. 33 C. J. 913. In the absence of proof to sustain the plea of parol purchase of a joint tenant's interest the presumption is that the title continued as it originally vested.

While one joint tenant may acquire title to the whole estate, or portion thereof, by prescription as against his co-tenants, by disseizen or adverse possession, the dis-

seizor or claimant by adverse possession must actually oust all co-tenants or do some act sufficient to bring notice to his joint owners of his intention to hold and claim the entire estate against them and thus start the statute of limitations running in his favor, else he can never acquire title in such manner, since the seizin or possession of the joint property by one joint tenant is, in law, the seizen of the others. Merely living on a tract of land owned jointly does not start the statute of limitations running in favor of the occupant, for his possession is the possession of his joint tenants and they have a right to rely upon his holding for their use and benefit, the presumption being that his entry and possession was according to his rights and no more. There is no presumption that a joint tenant in possession will wrongfully claim or is wrongfully claiming title against his co-owners, but the converse is true.

To sustain their claim of adverse possession appellants, children and heirs of Carroll Thomas, assert that they are and have been for more than fifteen years next before the commencement of the action, in the open, adverse and continuous possession of the entire tract willed by James Thomas to his wife, Margaret, and to their son, Carroll; but there is no evidence tending to show that they, or either of them, gave notice to appellee, Vinson, or any of appellees that appellants, or any one of them, were claiming the whole property against the other joint tenants, except that one of the sons of Carroll Thomas testified that some time shortly after the death of his grandmother, Margaret, in 1886, appellee, Vinson, came from his home in Tennessee to Trigg county, Kentucky, to the home of Carroll Thomas, to pay a visit to his cousin, and after spending the night and while he was preparing to and about to make his departure by horseback and while at the front gate of the residence, he heard appellee, Vinson, ask his father, Carroll Thomas, if there was anything coming to him from the estate of his grandmother, to which Carroll Thomas answered that he thought not. This evidence is flatly denied by appellee, Vinson. But if it be conceded that the conversation took place as detailed by the witness, it was not sufficient to establish the fact that Carroll Thomas was claiming the whole of the landed estate formerly held by him and his mother as joint tenants against Vinson and the other heirs of Margaret Thomas, who by her death

became joint owners with Carroll Thomas. At that time, according to the evidence, appellee, Vinson, did not know that his grandmother, Margaret Thomas, had been willed a portion of his grandfather's landed estate, but thought the whole tract of land was devised to Carroll Thomas, and did not learn the fact that his grandmother was the owner in fee of a one-half undivided interest in the tract of land of 172 acres devised to her and Carroll Thomas by James Thomas until shortly before the commencement of this action. Appellee lived in Tennessee, about sixteen miles from the property in question, and was seldom in that part of Kentucky where this land lay. Appellants also rely upon the fact that they not only enjoyed the peaceable possession of the land for the statutory period but that they made permanent and lasting improvements thereon by building a new residence, barn, fencing and the like. Appellees proved that the house had been repaired some years before but that it had again fallen into decay; that the barn had been repaired but through long use it had become of little value, and that the fencing, which had been rebuilt by appellants and their predecessors, had about rotted down, appellants having full control, use and benefit of the place during all those years. The repairing of the house, barn and fencing was no more than was required of the occupying tenant. That was his duty as it was also his duty to pay the taxes if he were getting the full use and benefit of the entire property. The general rule requires the tenant in possession to make such repairs as are necessary to the preservation of the joint property and to pay the taxes so as to protect the title, but if this burden is greater than he should bear, where he has the use and benefit of the whole property, he may require his joint tenants to contribute thereto. 33 C. J. 910. But in all events he must do such things as are necessary to the preservation of the improvements on the property and the title by which the tenants enjoy the same. Appellants and their predecessors in title did no more than this, if indeed they lived up to their obligations. Instead of being wronged by appellees, they have been permitted by them to enjoy the whole property, 172 acres, for a number of years, rent free; whereas, they were the owners of only a one-half undivided interest therein. This subject is fully discussed in the cases of Booten v. Robertson, 199 Ky. 302; May v. C. & O. Ry. Co., 184 Ky. 493.

Sullivan v. Sullivan, 179 Ky. 688, and many other cases of similar import recently decided by this court.

As appellants and their predecessors did nothing to start the statute of limitations running against their joint tenants, the possession of appellants was the possession of appellees, and the chancellor properly adjudged appellees entitled to participate in the proceeds derived from a sale of the entire joint property as their interest may appear.

Judgment affirmed.