[Civ. No. 1605. Fourth Appellate District.—January 27, 1936.]

LOLA DESIRRA SWARTZBAUGH, Appellant, v. SAM A. SAMPSON et al., Respondents.

452

Rutan & Mize for Appellant.

Marshall & Farnham for Respondent Sampson.

MARKS, J.—This is an action to cancel two leases executed by John Josiah Swartzbaugh, as lessor, to Sam A. Sampson, as lessee, of two adjoining parcels of land in Orange County. A motion for nonsuit was granted at the close of plaintiff's case and this appeal followed.

Defendant Swartzbaugh and plaintiff are husband and wife. They owned, as joint tenants with the right of survivorship, sixty acres of land in Orange County planted to bearing walnuts. In December, 1933, defendant Sampson started negotiations with plaintiff and her husband for the leasing of a small fraction of this land fronting on Highway 101 for a site for a boxing pavilion. Plaintiff at all times objected to making the lease and it is thoroughly established that Sampson knew she would not join in any lease to him.

The negotiations resulted in the execution of an option for a lease, dated January 5, 1934, signed by Swartzbaugh and Sampson. The lease, dated February 2, 1934, was executed

by the same parties. A second lease of property adjoining the site of the boxing pavilion was signed by Swartzbaugh and Sampson. This was also dated February 2, 1934, but probably was signed after that date. Plaintiff's name does not appear in any of the three documents and Sampson was advised that she would not sign any of them.

The walnut trees were removed from the leased premises. Sampson went into possession, erected his boxing pavilion and placed other improvements on the property.

Plaintiff was injured in February, 1934, and was confined to her bed for some time. This action was started on June 20, 1934. Up to the time of the trial plaintiff had received no part of the rental of the leased property. Sampson was in possession of all of it under the leases to the exclusion of plaintiff.

There is but one question to be decided in this case which may be stated as follows: Can one joint tenant who has not joined in the leases executed by her cotenant and another maintain an action to cancel the leases where the lessee is in exclusive possession of the leased property? This question does not seem to have been decided in California and there is not an entire uniformity of decision in other jurisdictions. In decisions on analogous questions where courts reached like conclusions they did not always use the same course of reasoning in reaching them. It seems necessary, therefore, that we consider briefly the nature of the estate in joint tenancy and the rights of the joint tenants in it.

A clear definition of the estate is contained in *Siberell* v. *Siberell*, 214 Cal. 767 [7 Pac. (2d) 1003], as follows: "Respecting joint tenancy, it is only necessary to amplify the definition quoted from section 683 (Civ. Code) by a quotation from the case of *DeWitt* v. *San Francisco*, 2 Cal. 289, 297, opinion rendered in 1852, defining joint tenancy as follows: 'Joint tenancy is a technical feudal estate, founded, like the laws of primogeniture, on the principle of the aggregation of landed estates in the hands of a few, and opposed to their division among many persons. For the creation of a joint tenancy, four unities are required, namely, unity of *interest*, unity of *title*, unity of *time,* unity of *possession.* 1 Cruise's Digest, (by Greenleaf) 355, sec. 11. 2 Crabb's Real Prop. sec. 2303. But the distinguishing incident is a right of survivorship. 1 Cruise, 359, sec. 27. 2 Crabb's Real Prop. sec.

454

2306.' These four characteristics are the acknowledged elements of a joint tenancy. (1 Tiffany on Real property, 2d ed., p. 625, par. 191; 2 Blackstone's Commentaries 180.) It is at once evident that there is thereby created but one estate and that each of the four elements, unity of interest, unity of title, unity of time and unity of possession, must be present and an absence of any one would change the nature of the estate."

For a proper understanding of some of the cases we will cite, it should be borne in mind that, at the common law, estates in joint tenancy were favored over those in common and that "to create a tenancy in common it was necessary to add restrictive and explanatory words, so as to expressly limit the estate to the grantees to hold as tenants in common and not as joint tenants" (2 Thompson on Real Property, 926) and that this rule has been abrogated by statute in California and many other states. (See secs. 683, 686, Civ. Code.)'

An estate in joint tenancy can be severed by destroying one or more of the necessary unities, either by operation of law, by death, by voluntary or certain involuntary acts of the joint tenants, or by certain acts or omissions of one joint tenant without the consent of the other. It seems to be the rule in England that a lease by one joint tenant for a term of years will effect a severance, at least during the term of the lease. (*Napier* v. *Williams,* [1911] 1 Ch. 361; *Doe* v. *Read,* 12 East, 57, 104 Reprint, 23; *Roe* v. *Lonsdale,* 12 East, 39, 104 Reprint, 16; *Palmer* v. *Rich,* [1897] 1 Ch. 134. See Thompson on Real Property, p. 929, sec. 1715.) We have found no case in the United States where this rule has been applied. From the reasoning used and conclusions reached in many of the American cases its adoption in this country seems doubtful.

One of the essential unities of a joint tenancy is that of possession. Each tenant owns an equal interest in all of the fee and each has an equal right to possession of the whole. Possession by one is possession by all. Ordinarily one joint tenant out of possession cannot recover exclusive possession of the joint property from his cotenant. (*Jamison* v. *Graham,* 57 Ill. 94.) He can only recover the right to be let into joint possession of the property with his cotenant. He cannot eject his cotenant in possession. (*Noble* v. *Manatt,* 42 Cal. App. 496 [183 Pac. 823].)

 Ordinarily one joint tenant cannot maintain an action against his cotenant for rent for occupancy of the property or for profits derived from his own labor. He may, however, compel the tenant in possession to account for rents collected from third parties. ⌉ (*McWhorter* v. *McWhorter*, 99 Cal. App. 293 [278 Pac. 454] ; *Richardson* v. *Superior Court*, 101 Cal. App. 638 [281 Pac. 1077]. See, also, *White* v. *Stuart, Buchanan & Co.*, 76 Va. 546, p. 567; *Messing* v. *Messing*, 64 App. Div. 125 [71 N. Y. Supp. 717] ; *Rush* v. *Rush*, 144 Misc. 489 [258 N. Y. Supp. 913] ; *Smith* v. *United etc. Co.*, 113 W. Va. 178 [166 S. E. 533].)

⌊The case of *Stark* v. *Barrett*, 15 Cal. 361, discusses the rights of a grantee of one cotenant of a specific parcel of property. It is there said: ''The case has been argued as though the question presented was to be determined by the rules of the common law, and in that view we have examined it. For its determination, considered by the common law, it is immaterial whether the grantees took the land embraced in their grant as joint tenants or as tenants in common. During the lives of the tenants, the rules regulating the transfer of their interest are substantially the same, whether they hold in joint tenancy or in common. Neither a joint tenant nor a tenant in common can do any act to the prejudice of his cotenants in their estate. This is the settled law, and hence a conveyance by one tenant of a parcel of a general tract, owned by several, is inoperative to impair any of the rights of his cotenants. The conveyance must be subject to the ultimate determination of their rights, and upon obvious grounds. One tenant cannot appropriate to himself any particular parcel of the general tract ; as, upon a partition, which may be claimed by the cotenants at any time, the parcel may be entirely set apart in severalty to a cotenant. He cannot defeat this possible result whilst retaining his interest, nor can he defeat it by the transfer of his interest. He cannot, of course, invest his grantee with rights greater than he possesses. The grantee must take, therefore, subject to the contingency of the loss of the premises, if, upon the partition of the general tract, they should not be allotted to the grantor. Subject to this contingency, the conveyance is valid, and passes the interest of the grantor. And this, we consider the result of the several cases cited by the counsel of the appellants. They go to the extent that the conveyance can have no

legal effect to the prejudice of the cotenant, not that it is absolutely void, that it is ineffectual against the assertion of his interest in a suit for partition of the general tract, but is good against all others. Until such partition, the grantee will be entitled to the use and possession as cotenant, in the parcel conveyed, with the other owners.] (*Bartlet* v. *Harlow*, 12 Mass. 348 [7 Am. Dec. 76]; *Varnum* v. *Abbott et al.*, 12 Mass. 474 [7 Am. Dec. 87]; *Nichols* v. *Smith*, 22 Pick. (Mass.) 316.)

"In *Robinett* v. *Preston's Heirs*, (2 Rob. 273, 278) the precise question under consideration was passed upon by the Court of Appeals of Virginia. The defendant in that case claimed under a grant from the State of North Carolina, and traced his title through a conveyance from one of the grantees of a parcel, described by metes and bounds, of the premises granted. To the introduction of the conveyance the demandants objected, on the ground that as no partition of the grant had been made by the grantees, it was not competent for one of them, a joint tenant of the granted land, to convey by metes and bounds such portion as he pleased, without the consent of his cotenant, and in prejudice of his rights, and that such conveyance was wholly void. The Circuit Court sustained the objection, and excluded the conveyance, and judgment passed for the demandants; but the appellate court held the ruling erroneous and reversed the judgment. In its opinion, after referring to the cases in Massachusetts, and stating that in *Varnum* v. *Abbott et al.* (12 Mass. 474, 480 [7 Am. Dec. 87]) it was held that a similar deed was not absolutely void, the Court said: 'With us there are still stronger reasons, if any were required, for holding such deeds not to be void. All grants to be most strongly construed against the grantor; and by our statute (1 Rev. Code, ch. 99, sec. 20) all alienations purporting to pass or assure a greater right or estate than the grantor may lawfully pass or assure, shall operate as alienations of so much of the right and estate as the grantor might lawfully convey. Under the covenants of such a deed as this, though it might be ineffectual to pass the particular tract as against the cotenant, yet as against the grantor and strangers it would be effectual to pass the interest of the grantor in the tract. Possession under it would support a release from the cotenant; and if the part conveyed were assigned to the alienee on partition, the title would be absolute at law. The deed being good against the

grantor, the entry of the tenant under it would be lawful; and though it might be inoperative, so far as the rights of the cotenant were thereby prejudiced, yet as it would invest the grantee with the estate of the grantor, so far as he could lawfully convey, the grantee would be tenant in common with the cotenant of his grantor, to the extent of the interest conveyed. His possession and seizin would be the possession and seizin of both, because such possession and seizin would not be adverse to the right of his companion, but in support of their common title.' ''

It is a general rule that the act of one joint tenant without express or implied authority from or the consent of his cotenant cannot bind or prejudicially affect the rights of the latter. (*Simpson* v. *Bergmann,* 125 Cal. App. 1 [13 Pac. (2d) 531]; *Oberwise* v. *Poulos,* 124 Cal. App. 247 [12 Pac. (2d) 156]; *Summer* v. *Vinson,* 211 Ky. 571 [277 S. W. 849]; *Lawrence* v. *Fielder,* 186 Ky. 324 [216 S. W. 1068].)

In the application of the foregoing rule the courts have imposed a limitation upon it which, in effect, is a qualification of its broad language. This perhaps is due to the nature of the estate which is universally held to be joint in enjoyment and several upon severance. This limitation arises in cases where one joint tenant in possession leases all of the joint property without the consent of his cotenant and places the lessee in possession. It seems to be based upon the theory that the joint tenant in possession is entitled to the possession of the entire property and by his lease merely gives to his lessee a right he, the lessor, had been enjoying, puts the lessee in the enjoyment of a right of possession which he, the lessor, already had and by so doing does not prejudicially affect the rights of the cotenant out of possession, it being conceded that the joint tenant not joining in the lease is not bound by its terms and that he can recover from the tenant of his cotenant the reasonable value of the use and enjoyment of his share of the estate, if the tenant under the lease refuses him the right to enjoy his moiety of the estate. (See *Codman* v. *Hall,* 9 Allen (91 Mass.), 335; *Eagle Brewing Co.* v. *Netzel,* 159 Ill. App. 375; *Frans* v. *Young,* 24 Iowa, 375.)

It has been held that each joint tenant, during the existence of the joint estate has the right to convey, mortgage or subject to a mechanic's lien an equal share of the joint property. (*People* v. *Varel,* 351 Ill. 96 [184 N. E. 209].) It has also

458

been held that one joint tenant in possession of personal property may pledge his interest in the property to another; that the pledgee's rights are valid to the extent of the pledgor's interest; that each joint tenant has an equal right of possession and so the pledgee has the same right of possession that the pledgor had; that the joint tenant out of possession can maintain no action against the pledgee that he could not maintain against the pledgor.] (*Frans* v. *Young, supra.*) It was held in *Johnson* v. *Nourse,* 258 Mass. 417 [155 N. E. 457], and *Cram* v. *Cram,* 262 Mass. 509 [160 N. E. 337], that one joint tenant cannot maintain trover against another except where the joint tenant in possession has completely ousted the other and deprived him of the benefit of the property and that mere refusal of possession is not such ouster.

/In 2 Thompson on Real Property, page 929, section 1715, it is said: "One joint tenant may make a lease of the joint property, but this will bind only his share of it." The same rule is thus stated in 1 Landlord and Tenant, Tiffany, 405: "One of two or more joint tenants cannot, by making a lease of the whole, vest in the lessee more than his own share, since that is all to which he has an exclusive right. Such a lease is, however, valid as to his share."

The foregoing authorities support the conclusion that a lease to all of the joint property by one joint tenant is not a nullity but is a valid and supportable contract in so far as the interest of the lessor in the joint property is concerned. /

While the qualities of estates of joint tenancy and a tenancy in common differ, the rights of possession are quite similar. It was thus expressed by Lord Coke: "It appeareth, that the essential difference between joyntenants and tenants in common is, that joyntenants have the lands by one joint title and in one right, and tenants in common by severall titles, or by one title and by severall rights; which is the reason, that joyntenants have one joint freehold, and tenants in common have severall freeholds. Onely this propertie is common to them both viz. that their occupation is individed, and neither of them knoweth his part in severall." (*Palmer* v. *Rich,* [1897] 1 Ch. 134, at 142.) This being so, decisions on similar questions to the one we are considering, where estates in common are concerned, have considerable weight.

/In the case of *Lee Chuck* v. *Quan Wo Chong & Co.,* 91 Cal. 593 [28 Pac. 45], the plaintiff, a tenant in common, brought

an action to oust defendant who was holding under a lease from another tenant in common, the Supreme Court reversed the judgment in favor of plaintiff and said: "The evidence does not support the judgment. It is expressly alleged in the complaint that 'this plaintiff and one Chay Yune are successors in interest of said E. L. Goldstein, and to said building on the northwest corner of Dupont and Clay Streets, and in and to said lease executed to Pee Han, and that they hold title to the same as tenants in common'. The uncontradicted evidence shows that the defendant was in possession of the property with the consent of Chay Yune. All that the plaintiff was entitled to, therefore, was to be let into possession with the defendant,—to enjoy his moiety. (Freeman on Cotenancy and Partition, secs. 180, 220; *Pickard* v. *Perley*, 45 N. H. 188, 191 [86 Am. Dec. 153]; *Ord* v. *Chester*, 18 Cal. 77, 80.)

"One tenant in common may, 'by either lease or license, . . . confer upon another person the right to occupy and use the property of the co-tenancy as fully as such lessor or licensor himself might have used or occupied it if such lease or license had not been granted. If either co-tenant expel such licensee or lessee, he is guilty of a trespass. If the lessee has the exclusive possession of the premises, he is not liable to any one but his lessor for the rent, unless the other cotenants attempt to enter and he resists or forbids their entry, or unless, being in possession with them, he ousts or excludes some or all of them.' (Freeman on Cotenancy and Partition, sec. 253.) There is no evidence tending to show that the defendant ever refused to allow the plaintiff to enjoy the use of the premises with him. The judgment does not confine the plaintiff's right of recovery to his own moiety, but provides that the plaintiff shall have and recover from defendant the restitution and possession of the premises described in the complaint."

The case of *Zeigler* v. *Brenneman*, 237 Ill. 15 [86 N. E. 597], is of interest here. The defendant was in possession of part of the common property under an assignment of a lease from one of the tenants in common, to one Seybert. Rapp, one of the plaintiffs, was in possession of another portion of the common property under a lease from all of the tenants in common who joined with him in an action to cancel defendant's lease. In denying them relief the Supreme

Court of Illinois said: "The lease is void as against the grantor's co-tenants; that is to say, in determining their rights in the property, no consideration is to be given to the existence of that lease. But it does not follow therefrom that it is of no effect as between the lessor and the lessee, even while the premises remain undivided. On the contrary, as between them it is just as valid as a lease of property owned entirely by the lessor. (Freeman on Cotenancy and Partition, sec. 253.) The law is that one tenant in common may not prejudice the rights of his co-tenants by a conveyance of any specific part, or of any interest, right, or license in any specific part, of the common property, but such a conveyance is valid as against the grantor, at least by way of estoppel. It is only where, and as far as, it comes in conflict with the interests of the co-tenants, that it is void. (*Fredrick* v. *Fredrick,* 219 Ill. 568 [76 N. E. 856]; *Finch* v. *Green,* 225 Ill. 304, [80 N. E. 318].) In the present case, after the execution of the lease to Seybert, he and George Zeigler together held and possessed all the privileges, right, title, and interest in the land, including the oil and gas, that George Zeigler had before possessed, and the rights of George Zeigler's cotenants remained precisely as they were before that lease was made. For example, if there was a partition of the land, then the Seybert lease would follow the interest of George Zeigler and be operative only upon the land set off to him, but, as between George Zeigler and Seybert, the latter had the same right in reference to operating the land for oil and gas that George Zeigler had prior to the execution of the lease, subject only to such burdens as were imposed upon Seybert by that instrument. It follows, therefore, that nothing was conveyed to Rapp by George Zeigler when he joined in the lease which Rapp took. Rapp has no greater right than if his lease was alone with the children of Martha Zeigler; the Seybert lease having been recorded and operations having been in full swing on the land under that instrument when Rapp took his lease. Neither of the lessees can maintain partition (*Watford Oil & Gas Co.* v. *Shipman,* 233 Ill. 9 [84 N. E. 53, 122 Am. St. Rep. 144]), and neither of them has the right to operate without the consent of the other (*Murray* v. *Haverty,* 70 Ill. 318), but either of the lessors can maintain partition, and in that way give to his lessee the sole right to operate for oil and gas in the portion of the land which may be set

off to such lessor. If appellants and Rapp can agree upon the method by which this land shall be operated then they may operate it, one-half of the oil going to Rapp, out of which he shall pay to each of the children of Martha V. Zeigler one-eighteenth part of that half as rent or royalty, the other half of the oil going to appellants, out of which they shall pay one-eighth part of that half to George Zeigler as rent or royalty. If, however, appellants and Rapp cannot so agree, neither can rightfully operate the land for oil unless some one of the tenants in common elects to have the land partitioned, in which event the rights of each lessee will attach to the land set off to his lessor or lessors. It is true that this view requires the children of Martha V. Zeigler or their lessee to agree upon the operation of the land for oil and gas, in case they so desire to operate while the land remains undivided, with appellants instead of with George Zeigler; but in law this is not to be regarded as prejudicial to their interests, as it cannot be said that George Zeigler's lessees will be less ready to join with the children or their lessee in operating the land than would George Zeigler himself.'' (See, also, *Grundy* v. *Martin,* 143 Mass. 279 [9 N. E. 647]; *Hayden* v. *Patterson,* 51 Pa. St. 261; *Harlan* v. *Central Phosphate Co.,* (Tenn. Ch. App.) 62 S. W. 614.)

The following cases support the conclusion announced in the foregoing cases that where one tenant leases the common property to a stranger to the title the other tenants in common cannot cancel the lease or recover exclusive possession of the entire property: *Lick* v. *O'Donnell,* 3 Cal. 59 [58 Am. Dec. 383]; *Woods* v. *Rolls,* (Tex. Civ. App.) 268 S. W. 988; *Rolls* v. *Woods,* (Tex. Com. App.) 291 S. W. 532; *Keay* v. *Goodwin,* 16 Mass. 1; *Rising* v. *Stannard,* 17 Mass. 282; *King* v. *Dickerman,* 77 Mass. (11 Gray) 480; *Tainter* v. *Cole,* 120 Mass. 162; *Satterlee* v. *Umenthum,* 47 S. D. 372 [198 N. W. 823]; *Nott* v. *Owen,* 86 Me. 98 [29 Atl. 943, 41 Am. St. Rep. 525]; *Earp* v. *Mid-Cont. Pet. Corp.,* 167 Okl. 86 [27 Pac. (2d) 855, 91 A. L. R. 188]; *Compton* v. *People's Gas Co.,* 75 Kan. 572 [89 Pac. 1039, 10 L. R. A. (N. S.) 787]; *Sarchet* v. *Legg,* 60 Or. 213 [118 Pac. 203]; *Pastine* v. *Altman,* 93 Conn. 707 [107 Atl. 803].

Tiffany, in 1 Real Property, 684, says that the effect of a lease by one cotenant is to give the lessee the right to share in the possession of the leased property for the term of the

lease. This coincides with statements made in *Lee Chuck* v. *Quan Wo Chong & Co., supra,* and in *Noble* v. *Manatt, supra,* that all a cotenant out of possession is entitled to is to be let into possession with the lessee of his cotenant to enjoy his moiety. This rule has not been uniformly adopted and its application in this state has not been directly decided.

As far as the evidence before us in this case is concerned, the foregoing authorities force the conclusion that the leases from Swartzbaugh to Sampson are not null and void but valid and existing contracts giving to Sampson the same right to the possession of the leased property that Swartzbaugh had. It follows they cannot be cancelled by plaintiff in this action.

As we have remarked, the courts are not in entire accord on the rules we have set forth nor in the reasoning used in arriving at the conclusions announced. This is illustrated in the following citations: *Southern Inv. Co.* v. *Postal Telegraph-Cable Co.,* 156 N. C. 259 [72 S. E. 361, Ann. Cas. 1913A, 224]; *Dorn* v. *Dunham,* 24 Tex. 366; *Mussey* v. *Holt,* 24 N. H. 248 [55 Am. Dec. 234]; *Gage* v. *Gage,* 66 N. H. 282 [29 Atl. 543, 28 L. R. A. 829]; *Buchanan* v. *Jencks,* 38 R. I. 443 [96 Atl. 307, 2 A. L. R. 986]; *Baker* v. *Wheeler & Martin,* 8 Wend. (N. Y.) 505 [24 Am. Dec. 66]; *Muskeget Island Club* v. *Prior,* 228 Mass. 95 [117 N. E. 2]; *Susquehanna etc. Co.* v. *St. Clair,* 113 Md. 667 [77 Atl. 1119, 140 Am. St. Rep. 452]. See 33 Harvard Law Review, 482.

Plaintiff expresses the fear that as one of the leases runs for five years, with an option for an additional five years, she may lose her interest in the leased premises by prescription. It is a general rule that a lessee in possession of real property under a lease cannot dispute his landlord's title nor can he hold adversely to him while holding under the lease. If, as held in numerous cases, the lessee of one cotenant holds the possession of his lessor and that a cotenant in possession holds for the other cotenant and not adversely, Sampson would have great difficulty in establishing any holding adverse to plaintiff without a complete and definite ouster. As a general rule an adverse possessor must claim the property in fee and a lessee holding under a lease cannot avail himself of the claim of adverse possession. There are certain exceptions to this rule which do not seem to be applicable to this case. There is no showing that plaintiff ever demanded that Sampson let her into possession of her moiety of the

estate nor is there anything to indicate that he is holding adversely to her.

Judgment affirmed.

Barnard, P. J., and Jennings, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on March 26, 1936.